# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| **AMERICA FIRST FOUNDATION,** | **Case No. 2:24-CV-12684-DPH-DRG** |
| Plaintiff, | **Hon. Denise Page Hood** |
| v. | **Mag. David R. Grand** |
| **CLAY STREET ENTERTAINMENT, LLC,** | |
| Defendant. | |

**BRISTOW LAW, PLLC**
Kyle J. Bristow (P77200)
P.O. Box 453
St. Clair, MI 48079
(T): (248) 838-9934
(F): (586) 408-6384
(E): bristowlaw@gmail.com
*Attorney for America First Foundation*

**LAW OFFICE OF BEN GONEK, PLLC**
Ben M. Gonek (P43716)
14290 Northline Rd.
Southgate, MI 48195
(T): (313) 963-3377
(F): (313) 924-1284
(E): ben@goneklaw.com
*Attorney for Clay Street Entertainment, LLC*

**LAW OFFICE OF JAMES GEROMETTA**
James R. Gerometta (P60260)
27 E. Flint St., Ste. 2
Lake Orion, MI 48362
(T): (313) 899-7826
(E): james@geromettalaw.com
*Attorney for Clay Street Entertainment, LLC*

## PLAINTIFF AMERICA FIRST FOUNDATION'S MOTION FOR SUMMARY JUDGMENT

## (ORAL ARGUMENT NOT REQUESTED)

NOW COMES America First Foundation ("Plaintiff"), by and through Attorney Kyle J. Bristow, and hereby propounds upon Clay Street Entertainment, LLC ("Defendant"), and this Honorable Court Plaintiff America First Foundation's Motion for Summary Judgment:

1. Pursuant to E.D. Mich. LCrR 7.1(a)(2), Plaintiff's undersigned counsel sent an email to Attorney Ben M. Gonek at <ben@goneklaw.com> and Attorney James R. Gerometta at <james@geromettalaw.com> on March 23, 2026, to request concurrence for the relief prayed for herein, and on March 23, 2026, Attorney James R. Gerometta respectfully denied the request.

2. For the reasons set forth in the attached Brief, the Court should enter summary judgment in favor of Plaintiff and against Defendant as to Plaintiff's sole count of breach of contract.

WHEREFORE, Plaintiff prays that this Honorable Court will grant summary judgment in favor of Plaintiff and against Defendant as to Plaintiff's claim for breach of contract.

Respectfully submitted,

**BRISTOW LAW, PLLC**


/s/ Kyle J. Bristow
Kyle J. Bristow (P77200)
P.O. Box 453
St. Clair, MI 48079
(T):  (248) 838-9934
(F):  (586) 408-6384
(E):  bristowlaw@gmail.com
*Attorney for America First Foundation*

Dated:  March 23, 2026

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| **AMERICA FIRST FOUNDATION,** | **Case No. 2:24-CV-12684-DPH-DRG** |
| Plaintiff, | **Hon. Denise Page Hood** |
| v. | **Mag. David R. Grand** |
| **CLAY STREET ENTERTAINMENT, LLC,** | |
| Defendant. | |

**BRISTOW LAW, PLLC**
Kyle J. Bristow (P77200)
P.O. Box 453
St. Clair, MI 48079
(T):  (248) 838-9934
(F):  (586) 408-6384
(E):  bristowlaw@gmail.com
*Attorney for America First Foundation*

**LAW OFFICE OF BEN GONEK, PLLC**
Ben M. Gonek (P43716)
14290 Northline Rd.
Southgate, MI 48195
(T):  (313) 963-3377
(F):  (313) 924-1284
(E):  ben@goneklaw.com
*Attorney for Clay Street Entertainment, LLC*

**LAW OFFICE OF JAMES GEROMETTA**
James R. Gerometta (P60260)
27 E. Flint St., Ste. 2
Lake Orion, MI 48362
(T):  (313) 899-7826
(E):  james@geromettalaw.com
*Attorney for Clay Street Entertainment, LLC*

## PLAINTIFF AMERICA FIRST FOUNDATION'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

## (ORAL ARGUMENT NOT REQUESTED)

## **TABLE OF CONTENTS**

I.  TABLE OF AUTHORITIES.............................................................................2

II.  ISSUE PRESENTED ...................................................................................4

III.  STATEMENT OF FACTS ...........................................................................4

IV.  LAW & ARGUMENT ...............................................................................14

   A.  STANDARD OF REVIEW ...................................................................14

   B.  PRINCIPAL POINT OF ARGUMENT......................................................14

V.  PRAYER FOR RELIEF...............................................................................16

1

# I.  TABLE OF AUTHORITIES

**Statutory Law**

MCL 566.106 ...................................................................................10

**Case Law**

*Alan Custom Homes v. Krol*, 256 Mich. App. 505, 667 N.W.2d 379
(Mich. App. 2003)................................................................15, 20

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)..........................14, 18

*Carpenter v. Smith*, 147 Mich. App. 560, 383 N.W.2d 248 (Mich. App.
1995) ...............................................................................................15

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).......................................14, 18

*Dolan v. Continental Airlines/Continental Express*, 454 Mich. 373, 563
N.W.2d 23 (Mich. 1997).......................................................................17

*Erickson v. Goodell Oil Co.*, 384 Mich. 207, 180 N.W.2d 798 (Mich.
1970)..............................................................................................15, 17

*Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938) ....................................14

*Hi-Way Motor Co. v. Int'l Harvester*, 398 Mich. 330, 247 N.W.2d 813
(Mich. 1976)......................................................................................19

*In re Erickson Estate*, 202 Mich. App. 329, 508 N.W.2d 181 (Mich.
App. 1993).....................................................................................15, 17

*Kamalnath v. Mercy Mem'l Hosp. Corp.*, 194 Mich. App. 543, 487
N.W.2d 499 (Mich. App. 1992) .......................................................15, 17

*Lichon v. American Universal Ins.*, 435 Mich. 408, 459 N.W.2d 288
(Mich. 1990)......................................................................................19

*Matsushita Electric Industrial Co., Ltd., v. Zenith Radio Corp.*, 475
U.S. 574 (1986).................................................................................14

*Meretta v. Peach*, 195 Mich. App. 695, 491 N.W.2d 278 (Mich. App. 1992) .......................................................................................19

*Pakideh v. Franklin Commercial Mortg Grp*, 213 Mich. App. 636, 540 N.W.2d 777 (Mich. App. 1995) ...............................................17

*Pittsburgh Tube Co v. Tri-Bend, Inc.*, 185 Mich. App. 581, 463 N.W.2d 161 (Mich. App. 1990).............................................................15

*Quality Products & Concepts Co. v. Nagel Precision*, 469 Mich. 362, 666 N.W.2d 251 (Mich. 2003) ...............................................19

*Reed v. Citizens Ins. Co.*, 198 Mich. App. 443, 499 N.W.2d 22 (Mich. App. 1993)...........................................................................15

*Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989).......................14

*Woody v. Tamer*, 158 Mich. App. 764, 405 N.W.2d 213 (Mich. App. 1987) .......................................................................................15

## Court Rules

Fed. R. Civ. P. 56(a)...................................................................................14

## Miscellaneous Authorities

M Civ JI 142.01-142.551 ...........................................................................15

3

## II.  ISSUE PRESENTED

1.  Whether the Court should enter summary judgment in favor of Plaintiff and

against Defendant for Plaintiff's sole count of breach of contract?

> Plaintiff's Response:               Yes.
>
> Defendant's Anticipated Response:    No.
>
> The Court Should Answer:            Yes.

## III.  STATEMENT OF FACTS

Plaintiff is suing Defendant for the significant financial injury Plaintiff

suffered as a direct and proximate result of Defendant failing to honor Defendant's

contractual obligations to Plaintiff when Defendant effectuated a last-minute

cancellation of a venue reservation which derailed Plaintiff's annual America First

Political Action Conference.  (ECF No. 14, PageID. 73, ¶ 1).

Plaintiff is a 501(c)(4) non-profit corporation existing by and through the law

of the State of Delaware, and Plaintiff's principal place of business is located in City

of Chicago, Cook County, State of Illinois.  (ECF No. 14, PageID. 73, ¶ 2; Exhibit

1 - ¶ 2).

Defendant is a limited liability company existing by and through the law of

the State of Michigan.  (ECF No. 14, PageID. 73, ¶ 3).

Plaintiff is a politically right-of-center organization dedicated to crafting a

new vision of the American nation, and it does so by championing the role of God

4

in society and upholding the principles of nationalism, Christianity, and traditionalism.   (ECF No. 14, PageID. 74, ¶ 7; Exhibit 1 - ¶ 3).  Led by Nicholas J. Fuentes, Plaintiff maintains a website at <https://americafirstfoundation.org/>. (ECF No. 14, PageID. 75, ¶ 7; Exhibit 1 - ¶ 3).

Since being founded in 2020, until 2023 Plaintiff has annually hosted its America First Political Action Conference, which is an assembly of people who wish to hear presentations by speakers about political and cultural matters from the perspective of Plaintiff.  (ECF No. 14, PageID. 75, ¶ 8; Exhibit 1 - ¶ 4).  Other than Nicholas J. Fuentes, prior speakers of these conferences have included various patriotic conservative and right-wing speakers, such as author Michelle Malkin, journalist Scott Greer, former U.S. Congressman Steve King, U.S. Congressman Paul Gosar, U.S. Congresswoman Marjorie Taylor Green, former Maricopa County Sheriff Joe Arpaio, radio show host Jesse Lee Peterson, former Lieutenant Governor of Idaho Janice McGeachin, and Arizona State Representative Wendy Rogers.  (ECF No. 14, PageID. 75, ¶ 8; Exhibit 1 - ¶ 4).

On or about March 4, 2024, Plaintiff retained the services of Show Ready Technologies, Inc., a for-profit corporation existing by and through the law of the State of Michigan, and which maintains a website at <https://showreadytech.com/>, to assist Plaintiff by acting as Plaintiff's agent to procure a venue for Plaintiff's 2024 America First Political Action Conference.  (ECF No. 14, PageID. 75, ¶ 9; Exhibit

5

1 - ¶ 5).  At all relevant times of the controversy, Show Ready Technologies, Inc., was authorized to act on Plaintiff's behalf as Plaintiff's booking agent and intermediary, and Show Ready Technologies, Inc., enjoyed actual and/or apparent authority to act on behalf of Plaintiff.  (ECF No. 14, PageID. 75, ¶ 9; Exhibit 1 - ¶ 6).

Deborah Kanter is the owner and president of Show Ready Technologies, Inc., and she communicated with Defendant's agents or employees to procure a venue for Plaintiff's 2024 America First Political Action Conference.  (ECF No. 14, PageID. 76, ¶ 10).

At all times relevant to the instant controversy, Defendant owns or has the right to lease the Russell Industrial Center, which is located at the address commonly known as 1600 Clay Street, Detroit, MI 48211.   See <https://www.russellindustrialcenter.com/>.  (ECF No. 14, PageID. 76, ¶ 11).

On March 15, 2024, Nicholas J. Fuentes and Jasiah Helm—a representative of Plaintiff—attended a walkthrough of the Russell Industrial Center with Kory Miller, who is the Director of Business Development for Show Ready Technologies, Inc., and Karen Addison, who is a manager of the Russell Industrial Center and an agent or employee of Defendant.  (ECF No. 14, PageID. 76, ¶ 12; Exhibit 1 - ¶ 7).  During this walkthrough, Nicholas J. Fuentes was abundantly transparent about who he was, that Plaintiff is a right-of-center political organization, and the nature of the

planned event, insofar as Nicholas J. Fuentes did not want his time or Plaintiff's financial resources to be wasted if Defendant was inclined to engage in political discrimination against Plaintiff.  (ECF No. 14, PageID. 76, ¶ 12; Exhibit 1 - ¶ 8).  Karen Addison did not whatsoever object to the nature of the event and/or Plaintiff's political ideology and the rental request was approved by Ms. Addison, who was prepared to and in fact offered to provide a written rental agreement which could be signed that day.  (ECF No. 14, PageID. 76-77, ¶ 12; Exhibit 1 - ¶ 12).

An agreement was entered into by and between Plaintiff and Defendant wherein approximately 40,000 square feet of the main floor of the Russell Industrial Center would be leased for Plaintiff's use for a speaking engagement on June 15, 2024, at 9:00 p.m., to June 16, 2024, at 2:00 a.m., in exchange for Defendant being financially compensated for the same.  (ECF No. 14, PageID. 77, ¶ 13; Exhibit 1 - ¶ 13).  On April 2, 2024, Show Ready Technologies, Inc., sent $7,198.00 to Defendant as a deposit for the venue, which was paid by Show Ready Technologies, Inc., within the scope of its authority as Plaintiff's agent.  (ECF No. 14, PageID. 77, ¶ 13).  Defendant in fact accepted the benefits of the contract by scheduling the reservation and accepting the deposit payment.  (ECF No. 14, PageID. 77, ¶ 13).

In Pages 8 through 9 of Defendant's April 30, 2025, Discovery Response, documents provided by Defendant show that (1) the venue deposit was paid by Show Ready Technologies, Inc., on March 30, 2024, and (2) Show Ready Technologies,

7

Inc.'s Deborah Kanter makes it clear to Defendant's Karen Addison via email on March 30, 2024, that Show Ready Technologies, Inc., is merely "the agency/production company of record for our client, and we are handling all payments to you directly on their behalf and we ask that information pertaining to fees only discussed with me or Paul James, VP/Director of Technology or Kory Miller Direct of Business Development." (Exhibit 2 – pp. 8-9). It is not in dispute that Defendant in fact received the venue deposit payment from Plaintiff's agent— Show Ready Technologies, Inc.—insofar as Defendant had the audacity to try to condition to return of the venue deposit upon a release of liability agreement being executed. (Exhibit 2 – pp. 10-11). Further, Defendant's Gary Mexicotte emailed Show Ready Technologies, Inc.'s Kory Miller on April 3, 2024, to acknowledge receipt of the deposit of $7,198.00 for the rented venue. (Exhibit 2 – pp. 12-13).

Through emails, conduct, and actions, Defendant entered into a binding contract with Plaintiff, through Plaintiff's agent, Show Ready Technologies, Inc. (ECF No. 14, PageID. 77, ¶ 14). Specifically, Plaintiff, by and through Show Ready Technologies, Inc., communicated with Defendant via email about the event, which involved $7,198.00 being paid as a fifty percent deposit for the rental of the venue— the total rental price being $14,396.00. (Exhibit 2 – pp. 14-21)

On April 3, 2024, a second walkthrough was conducted of the Russell Industrial Center, which was attended by Show Ready Technologies, Inc.'s Kory

8

Miller, Paul James, and Deborah Kanter, Nicole Miller—Plaintiff's hired caterer—, Plaintiff's Jasiah Helm, and Defendant's Karen Addison and Dwon Monson. (ECF No. 14, PageID. 77, ¶ 15). It was made palpably clear to Defendant's Karen Addison and Dwon Monson that the rental of the Russell Industrial Center was for a speaking engagement of a controversial political nature. (ECF No. 14, PageID. 77, ¶ 15; Exhibit 1 - ¶ 14).

Defendant knew at all relevant times that Plaintiff's planned event would be controversial and involved a speaking engagement of a political nature. For example, Show Ready Technologies, Inc.'s Kory Miller emailed Defendant on May 22, 2024, to discuss security being needed for the event: "We will run pat-downs in the parking lot tent and guests will then move into the venue immediately to the right room to grab credentials." (Exhibit 2 – p. 25). Defendant even proactively reached out to PROSTAR Security—a business which offers private security—to discuss obtaining security guards for Plaintiff's controversial event, and Defendant relayed the price for the same to Plaintiff's agent via email. (Exhibit 2 – pp. 34-35). Defendant's Niko Matsamakis himself corresponded via email in early June of 2024 with Michael C. Whittaker of PROSTAR Security regarding security being provided for Plaintiff's controversial event. (Exhibit 2 – pp. 94-104).

Although the written rental agreement was not signed—which is not required for an agreement concerning the rental of land to be entered into for a weekend

9

insofar as Michigan's statute of frauds (MCL 566.106) does not apply to lease agreements for periods of time for less than one year in duration—, the proposed written rental agreement notes that the event is for a "**Speaking Engagement**." (Emphasis in original) (Exhibit 2, p. 19).   Between Defendant's Karen Addison personally meeting Plaintiff's Nicholas J. Fuentes and Jasiah Helm—who personally informed Defendant's Karen Addison that the planned event was of a right-wing political nature and would be controversial, Defendant proactively communicating with a third-party security company and communicating with Show Ready Technologies, Inc.'s Kory Miller about security guards, pat downs, and a security tent being used for the event, and the proposed written rental agreement noting that the rental is for a "speaking engagement," it is beyond dispute that Defendant was not misled about the planned event being controversial and involving speeches.

At all times relevant to the controversy, Defendant had actual knowledge that Deborah Kanter and Show Ready Technologies, Inc., were not themselves going to use the Russell Industrial Center for a speaking engagement, but rather, that Deborah Kanter and Show Ready Technologies, Inc., were communicating with and entering into the rental agreement on behalf of Plaintiff.   (ECF No. 14, PageID. 78, ¶ 16; Exhibit 1 - ¶¶ 8-9, 15).

Starting June 12, 2024, Plaintiff's agents began preparing the Russell Industrial Center for Plaintiff's annual America First Political Action Conference. (ECF No. 14, PageID. 78, ¶ 17; Exhibit 1 - ¶ 19).

Starting on or about June 12, 2024, third-party interlopers who oppose Plaintiff and Plaintiff's right-of-center political viewpoints began to put pressure on Defendant to cancel Plaintiff's rental of the Russell Industrial Center. (ECF No. 14, PageID. 78, ¶ 18).

On June 13, 2024, Defendant's Karen Addison and someone whose first name was mentioned as being "Niko"[1] telephoned Show Ready Technologies, Inc.'s Kory Miller and Deborah Kanter to inform them that Plaintiff's rental of the Russell Industrial Center had been cancelled by Defendant. (ECF No. 14, PageID. 78-79, ¶ 20).

On June 14, 2024, police officers of the Detroit Police Department arrived—at the request of Defendant—to the Russell Industrial Center and informed Plaintiff's representatives who were present that anyone affiliated with Show Ready Technologies, Inc., or Plaintiff had to leave the premises after they collected their personal property or else they would be trespassed. (ECF No. 14, PageID. 79, ¶ 21; Exhibit 1 - ¶ 20).

---

[1] Presumably Defendant's Niko Matsamakis.

11

Defendant breached its contractual obligations to Plaintiff when Defendant refused to allow Plaintiff to use the Russell Industrial Center for Plaintiff's June 15 to 16, 2024, America First Political Action Conference.  (ECF No. 14, PageID. 79, ¶ 22).  On June 14, 2024, Defendant's Niko Matsamakis declared in writing the event cancelled.  (Exhibit 2, p. 109).

Plaintiff estimates that approximately 1,500 people were planning to attend Plaintiff's planned June 15 to 16, 2024, America First Political Action Conference, and Plaintiff incurred significant financial injury as a direct and proximate result of paying the costs associated with an event which did not happen at the Russell Industrial Center due to Defendant's last-minute breach of the contract; to wit:

- Plaintiff paid $218,835.68 to Show Ready Technologies, Inc., for services and production-related costs, in addition to a processing fee of $1,921.25 associated with the payment—for a total of $220,756.93.

- Plaintiff paid $200,650.00 to Kristina's Catering, LLC, for food and beverages.

- Plaintiff paid $4,145.33 to <https://www.customlanyard.net/>, $1,173.00 to <https://www.vistaprint.com/>, $1,831.18 to <https://www.stickermule.com/>, $11,842.32 to Inkwell Screen Printing & Embroidery, Inc., $6,022.60 to <https://doorstepprinting.com/>, and $479.32 to <https://www.bestofsigns.com/> for lanyards, pamphlets, stickers, t-shirts,

12

and signs which were event-specific for the planned conference at the Russell Industrial Center.

- Plaintiff paid $13,168.93 as processing fees associated with tickets purchased by would-be attendees of the conference.

- Plaintiff paid $487.33 for U-Haul to transport material to the Russell Industrial Center.

- Plaintiff owes Show Ready Technologies, Inc., an additional $190,087.37 for services that have been rendered and for production-related costs.

(ECF No. 14, PageID. 80-81, ¶ 24; Exhibit 1 - ¶¶ 21-22).

Defendant's last-minute cancellation of Plaintiff's rental of the Russell Industrial Center directly and proximately resulted in Plaintiff suffering the sum total amount of $650,644.31 in damages.  (ECF No. 14, PageID. 81, ¶ 25; Exhibit 1 - ¶ 23).  Had Defendant's Karen Addison simply informed Plaintiff's Nicholas J. Fuentes and Jasiah Helm back during the initial walkthrough of the Russell Industrial Center that Defendant would not rent the venue to Plaintiff, Plaintiff would not have invested significant sums of money into moving forward with the event.

The entirety of the Affidavit of Jasiah Helm is incorporated by reference as if fully set forth herein.  (Exhibit 1).

## IV.  LAW & ARGUMENT

## A.  STANDARD OF REVIEW

Fed. R. Civ. P. 56(a) pertinently provides that "A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."

The seminal cases interpreting Fed. R. Civ. P. 56 are *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), and *Matsushita Electric Industrial Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574 (1986). See *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478-1480 (6th Cir. 1989) (providing an excellent analysis of Fed. R. Civ. P. 56(a) motion practice).

## B.  PRINCIPAL POINT OF ARGUMENT

Plaintiff is clearly entitled to summary judgment as to Plaintiff's claim against Defendant for breach of contract, because there is no material dispute of fact and Plaintiff is entitled to judgment as a matter of law.  Plaintiff incorporates by reference as if fully set forth herein the Statement of Facts section, *supra*, of this Brief.

Plaintiff's breach of contract claim is based upon Michigan common law, which the Court must apply under the *Erie* doctrine.  *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938).

14

The elements for a breach of contract claim are as follows:

1. There is a valid, enforceable contract, which requires

    o parties competent to contract, *In re Erickson Estate*, 202 Mich. App. 329, 332, 508 N.W.2d 181 (Mich. App. 1993);

    o offer and acceptance, *Kamalnath v. Mercy Mem'l Hosp. Corp.*, 194 Mich. App. 543, 548-549, 487 N.W.2d 499 (Mich. App. 1992);

    o consideration, *Pittsburgh Tube Co v. Tri-Bend, Inc.*, 185 Mich. App. 581, 586, 463 N.W.2d 161 (Mich. App. 1990); and

    o mutuality of obligation, *Reed v. Citizens Ins. Co.*, 198 Mich. App. 443, 449, 499 N.W.2d 22 (Mich. App. 1993).

2. The defendant breached the contract by either

    o refusal to perform, *Carpenter v. Smith*, 147 Mich. App. 560, 564-565, 383 N.W.2d 248 (Mich. App. 1995), or

    o performance that does not conform to the contract's requirements, *Woody v. Tamer*, 158 Mich. App. 764, 772, 405 N.W.2d 213 (Mich. App. 1987).

3. Damages resulted from the breach. *Alan Custom Homes v. Krol*, 256 Mich. App. 505, 667 N.W.2d 379 (Mich. App. 2003).

See also M Civ JI 142.01-142.55.

For the instant controversy, there is a valid, enforceable contract, which Defendant breached; to wit:

1. Plaintiff and Defendant are both competent to enter into the contract at issue regarding the rental of the Russell Industrial Center; to wit:  Plaintiff is a 501(c)(4) non-profit corporation existing by and through the law of the State of Delaware, and Defendant is a limited liability company existing by and through the law of the State of Michigan.  (ECF No. 14, PageID. 73, ¶¶ 2-3; Exhibit 1; Exhibit 2).

2. Plaintiff offered, by and through Plaintiff's agent, Show Ready Technologies, Inc., to rent the approximately 40,000 square feet of the main floor of the Russell Industrial Center from Defendant for June 15 to 16, 2024, in exchange for financial compensation, and Defendant accepted this offer by receiving and accepting the agreed upon $7,198.00 deposit for the same and the total price of $14,396.00.  (ECF No. 14, PageID. 77, ¶ 13; Exhibit 1; Exhibit 2).

3. Valid consideration and mutuality of obligation exist for the contract at issue, because Plaintiff, by and through Plaintiff's agent, Show Ready Technologies, Inc., paid Defendant the agreed upon $7,198.00 deposit to rent the venue, and Defendant was obligated to provide the venue to Plaintiff for the agreed upon dates and times.  (ECF No. 14, PageID. 77, ¶ 13; Exhibit 1; Exhibit 2).

16

4. Defendant materially breached the agreement at issue by refusing to permit Plaintiff to have access to the main floor of the Russell Industrial Center from June 15 to 16, 2024.  (ECF No. 14, PageID. 79, ¶ 22; Exhibit 1; Exhibit 2).

5. As a direct and proximate result of Defendant having breached the contract at issue in the instant controversy, Plaintiff suffered damages in the sum total amount of $650,644.31.  (ECF No. 14, PageID. 80-81, ¶¶ 24- 25; Exhibit 1; Exhibit 2).

Plaintiff paid the deposit, Defendant accepted the deposit payment, material terms—i.e., date, location, price—were discussed and agreed upon, and there was ongoing coordination—i.e., security, logistics, walkthroughs.  Even absent a formal signed written agreement, Defendant's acceptance of the payment, scheduling of the event, and months-long coordination constitute objective manifestations of mutual assent as a matter of law.  See *Kamalnath*, 194 Mich. App. 543 (holding that a contract exists where parties agree upon essential terms even if a formal writing is not executed); *Dolan v. Continental Airlines/Continental Express*, 454 Mich. 373, 383, 563 N.W.2d 23 (Mich. 1997) (acceptance of a contract's proposed terms may be shown by conduct and constitutes an "implied-in-fact" contract); *Erickson v. Goodell Oil Co.*, 384 Mich. 207, 211-212, 180 N.W.2d 798 (Mich. 1970) (an implied-in-fact contract arises from circumstantial proof of an agreement, including a meeting of the minds and an intent to contract); *Pakideh v. Franklin Commercial*

17

*Mortg Grp*, 213 Mich. App. 636, 540 N.W.2d 777 (Mich. App. 1995) ("If an offer does not require a specific form of acceptance, acceptance may be implied by the offeree's conduct).

It should be noted that Defendant admitted in response to a discovery request that Defendant has "no documents" to evince that Defendant did not allow Plaintiff to rent the Russell Industrial Center:

> **REQUEST FOR PRODUCTION OF DOCUMENTS NO. 9**:   If Defendant maintains that Defendant never agreed to allow Success Strategies Unlimited, Inc. (d/b/a Show Ready Technologies, Inc.) and/or Plaintiff to rent space at the Russell Industrial Center for June 14 to 15, 2024, produce a true and accurate copy of any and all documents which corroborates Defendant's position of the same.
>
> **ANSWER:  No documents can be found at this time.**

(Exhibit 2, p. 4).

Defendant bears the burden of producing evidence of a genuine factual dispute in order for Defendant to successfully oppose Plaintiff's instant Motion for Summary Judgment.  Defendant's admission that Defendant has no documents to dispute that Plaintiff and Defendant entered into the rental of Defendant's Russell Industrial Center is dispositive.  *Celotex Corp.*, 477 U.S. 317; *Anderson*, 477 U.S. 242.

As set forth *supra*, Show Ready Technologies, Inc., enjoyed authority to act as Plaintiff's agent for purposes of the rental of the venue, and Defendant knew this insofar as Plaintiff's Nicholas J. Fuentes and Jasiah Helm met with Defendant's

Karen Addison, Ms. Addison knew that Plaintiff was the entity which would use the rented venue for its conference, and emails sent by Show Ready Technologies, Inc.'s Karen Addison to Defendant noted that Show Ready Technologies, Inc. is merely "the agency/production company of record for our client[.]"  (Exhibit 2, pp. 8-9). Under *Meretta v. Peach*, 195 Mich. App. 695, 491 N.W.2d 278 (Mich. App. 1992), a principal can be bound by its agent with actual or apparent authority for a contract to be created.  Defendant simply cannot accept payment from Plaintiff's agent while denying Plaintiff's contractual right to enforce the rental agreement.

Defendant has claimed that Defendant was somehow defrauded by Plaintiff into entering into the rental agreement, but the record evidence does not show the same.  Defendant has produced no corroborating documents to show that Plaintiff engaged in fraud.  Under *Hi-Way Motor Co. v. Int'l Harvester*, 398 Mich. 330, 247 N.W.2d 813 (Mich. 1976), fraud requires clear and convincing evidence to be established.  Defendant's fraud theory fails as a matter of law insofar as Defendant cannot produce any admissible evidence to support the elements of such a defense. Defendant cannot knowingly approve and facilitate the planned event for months, then reverse course based upon facts it already knew.  See *Quality Products & Concepts Co. v. Nagel Precision*, 469 Mich. 362, 666 N.W.2d 251 (Mich. 2003) (concerning waiver); *Lichon v. American Universal Ins.*, 435 Mich. 408, 459 N.W.2d 288 (Mich. 1990) (concerning estoppel principles).

There is simply no dispute of material facts; to wit:  it is undisputed that a contract was formed, it is undisputed that Plaintiff tendered the payment to Defendant for the rental of the venue, it is undisputed that Defendant had knowledge of the controversial nature of the event, it is undisputed that Defendant cancelled the contract by prohibiting Plaintiff to use the rented venue, and there is no evidence of fraud on the part of Plaintiff.  This is a straightforward breach of contract case governed by settled Michigan law.

Defendant is liable to Plaintiff for breach of contract for both the expectation and reliance damages which reasonably flowed from Defendant's breach.  *Alan Custom Homes*, 256 Mich. App. 505.

## V.  PRAYER FOR RELIEF

For the reasons set forth herein, Plaintiff prays that the Court will grant the instant Motion by entering summary judgment in favor of Plaintiff and against Defendant for Plaintiff's claim for breach of contract.  There is no material dispute of fact:  Plaintiff rented Defendant's Russell Industrial Center, Defendant breached that rental agreement by cancelling it last-minute, and Plaintiff suffered financial injury as a direct and proximate result of Defendant's breach of the agreement.

Respectfully submitted,

**BRISTOW LAW, PLLC**


/s/ Kyle J. Bristow
Kyle J. Bristow (P77200)
P.O. Box 453
St. Clair, MI 48079
(T):  (248) 838-9934
(F):  (586) 408-6384
(E):  bristowlaw@gmail.com
*Attorney for America First Foundation*

Dated:  March 23, 2026

21

## CERTIFICATE OF SERVICE

I, Kyle J. Bristow, affirm that I am an attorney of record for a party to the above-captioned civil action, and on March 23, 2026, I submitted this document to the Court's Electronic Filing System, which should provide notice of said filing to all attorneys of record for parties to the instant civil action who have registered to receive such service.

/s/ Kyle J. Bristow
Kyle J. Bristow (P77200)
P.O. Box 453
St. Clair, MI 48079
(T):  (248) 838-9934
(F):  (586) 408-6384
(E):  bristowlaw@gmail.com
*Attorney for America First Foundation*

Dated:  March 23, 2026