UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMERICA FIRST FOUNDATION,

                PLAINTIFF,            Case No. 24-cv-12684

-vs-                             Hon. DENISE PAGE HOOD

CLAY STREET ENTERTAINMENT,
LLC,

                DEFENDANT,

_____/

## **DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT**

Defendant, CLAY STREET ENTERTAINMENT, by and through its counsel,

BEN GONEK and JAMES GEROMETTA, moves this Court, pursuant to Fed. R. Civ.

P. for an order granting summary judgment in favor of Defendant Clay Street

Entertainment, LLC.

Plaintiff files a supporting brief and has contacted opposing counsel, who, on

behalf of the plaintiff, does not concur in the relief requested.

                        Respectfully Submitted,

                        */s/ Ben M. Gonek*_____
                        BEN M. GONEK (P43716)
                        Law Office of Ben Gonek, PLLC
                        14290 Northline Rd.
                        Southgate, MI 48195
                        (313) 963-3377
                        ben@goneklaw.com

1

/s/ James R. Gerometta
JAMES R. GEROMETTA (P60260)
Law Office of James Gerometta, PLLC
27 E. Flint St.
Suite 2
Lake Orion, MI 48362
(313) 530-9505
james@geromettalaw.com

Dated:  April 2, 2026

2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMERICA FIRST FOUNDATION,

                PLAINTIFF,         Case No. 24-cv-12684

-vs-                           Hon. DENISE PAGE HOOD

CLAY STREET ENTERTAINMENT,
LLC,

                DEFENDANT,

_____/

## **DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT**

3

I.

INTRODUCTION/STATEMENT OF ISSUES

Plaintiff, America First Foundation (America First), has sued Clay Street Entertainment, LLC (Clay Street) for breach of contract. They admit that they did not directly enter into a contract with Clay Street but claim that Success Strategies Unlimited, Inc,/DBA Show Ready Technologies, Inc. (Show Ready) was their agent. Thus, they have standing to sue for damages based on Clay Street's alleged breach of contract.

Clay Street's answer to America First's complaint sets forth several defenses to this claim; Clay Street asks this Court to enter an order for summary judgment in its favor based on two of these defenses:

- There is no privity of contract.

- Any valid contract between Clay Street and Show Ready was breached when Show Ready failed to pay the remaining balance to Clay Street at load-in, as required by the contract.

## II.

## CONTROLING AUTHORITY

*Little v. Howard Johnson Co.*, 183 Mich.App. 675; 455 N.W.2d 390 (Mich.App. 1990). Stating the standard for finding a principal-agent relationship under Michigan law.

*Able Demolition v. City of Pontiac*, 275 Mich. App. 577; 739 N.W.2d 696 (2007). Holding that a party to a contract may not sustain a suit for breach of contract if they were the first party to breach the contract.

## III.

## FACTS

On March 4, 2024, America First and Show Ready entered into a written agreement memorializing a prior agreement reached on March 1, 2024. Pursuant to that agreement, America First would use Show Ready as its exclusive "Event Production Services Partner for all events throughout the United States" [Exhibit A, letter of engagement agreement, paragraph 1]. That agreement noted that it did not create a "partnership, joint venture, or employment relationship" and that each party was acting as an "independent contractor" [Id, paragraph 12]. Finally, the agreement prohibited the parties from entering into any other agreements without a written agreement signed by both parties [Id., paragraph 7].

One of the events that Show Ready was producing for America First was a June

15, 2024, event in Detroit, Michigan. As part of that production, Show Ready was providing the event space through a subcontract with Clay Street.

On March 19, 2024, Clay Street provided Show Ready an estimate for the use of their event space for a speaking engagement. The estimate included a proposed contract between Show Ready and Clay Street to license the use of the Exhibition Center at the Russell Industrial Center [Exhibit B, license agreement and related emails, p. 2, license agreement, paragraph 1]. That contract required Show Ready to pay $14,396.00 in two payments: an initial deposit of $7,198.00 and the "Balance must be paid in full before load in" [Id., p. 10, estimate #1].[1] While Deborah Kanter, the president of Show Ready, did not sign the agreement until May 2, 2024, and did not return the agreement until May 7, 2024, Show Ready indicated their acceptance of the terms and paid the required $7,198.00 deposit by ACH transfer on May 30, 2024 [Id., p. 7, email of March 30, 2024].

Show Ready charged America First $22,000.00 to allow them to hold their event at Russell Street under their license for its use [Exhibit C, Show Ready Invoice # 2697].

The event was scheduled to take place on Saturday, June 15, 2024, with load-in on June 14, 2024. However, Show Ready asked about the cost of moving the load-in

---

[1] A second estimate may have been sent to Show Ready based on requested changes to the contract details, raising the final cost to $16,329.25, but none of the material terms were altered. [Exhibit B, p. 11].

to Thursday, June 13, 2024 [Exhibit D, emails between Show Ready and Clay Street, p. 7, email of April 4, 2024]. Show Ready requested that this change be made and that the load-in include Thursday morning [Id., p. 8, email of April 8, 2024]. The actual load-in began even earlier, on June 12, 2024 [see declaration of Jasiah Helm, Exhibit 1 to Plaintiff's Motion for Summary Judgment, ECF 16-1].

As of the evening of June 13, 2024, after the load-in had begun, Show Ready had not paid Clay Street the balance remaining as required by the contract.

IV.

ARGUMENT

### a. Federal Rule of Civil Procedure 56(a).

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.

### b. There was no privity of contract.

Michigan law generally requires privity to enforce a contract. An exception exists where an agent has acted on behalf of a principal to enter into a valid contract. America First claims that Show Ready was its agent and thus it can enforce Show Ready's contract with Clay Street. This is simply not true. The contract between America First and Show Ready shows that America First hired Show Ready to be its production company. Its services included information technology, audio and lighting

7

for the event, and security [Exhibit E, email of April 22, 2024: Topics/notes for upcoming meeting]. It provided setup and teardown for the event, as well as tents and the venue [Exhibit C].

"An agency relationship may arise when there is a manifestation by the principal that the agent may act on his account." *Meretta v. Peach*, 195 Mich.App. 695, 697, 491 N.W.2d 278, 280 (Mich.App. 1992) (citing 1 Restatement Agency, 2d, § 15, p 82). In Michigan, the test for a principal-agent relationship is whether the principal has the right to control the agent. *Little v. Howard Johnson Co.*, 183 Mich.App. 675, 680, 455 N.W.2d 390, 393 (Mich.App. 1990). Mere oversight is insufficient; the principal must retain some control and direction over the agent's day-to-day work. *Id.* at 681, 394.

Merely working on behalf of others, or entering into contracts that may ultimately benefit another, is insufficient to establish a principal-agent relationship. In *Prudential Protective Services, LLC, v. NRP Group, LLC*, 2015 WL 1314456 (Mich. App. 2015) [attached], a property management group disclaimed liability for contracts it entered into, claiming it was merely an agent for property owners. The Michigan Court of Appeals upheld the trial court's grant of summary judgment in favor of the plaintiff's finding that there was no evidence that the property management group acted as an agent for its clients. It found that, "Defendant accepted invoices from plaintiff, defendant inputted invoices into its internal computer systems, and defendant

8

actually sent checks to plaintiff." *Prudential Protective Services, LLC*, at \*2. The court then looked at the contract between the plaintiff and defendant, "Based on the language of the contract, the only parties to the contract were plaintiff and defendant. . . . Even giving defendant the benefit of reasonable doubt, defendant expressly agreed to make payments for services provided under the contract, without mention of any principal." *Id.*

Even though the defendant claimed during contract negotiations to be the agent of the property owners, based on these facts, the court found that summary judgment based on the lack of evidence of an actual principal-agent relationship was correct. *Id.*

Similarly, subcontracting for services that will benefit a client does not establish a principal-agent relationship between the contractor and the client. In *Elite Communications, Inc. v. Lastar.Com, Inc.*, 2004 WL 94106 (Mich.App., 2004) [attached], the Michigan Court of Appeals upheld summary judgment in favor of the defendant, finding no evidence of a principal-agent relationship between a cable installation contractor and a subcontractor. The City of Wyandotte had hired Lastar to perform cable installation work. Lastar hired Fibeax to perform a portion of the work, and Fibeax, in turn, hired the plaintiff, Elite Communications. When Fibeax filed to pay Elite Communications, Elite Communications sued Lastar and the City of Wyandotte, claiming that Fibeax acted as their agent when they contracted with Elite Communications. The court found no evidence of agency. Fibeax's agreement with

9

the plaintiff was strictly between the plaintiff and Fibeax and was independent of Fibeax's relationship with Lastar. *Elite Communications, Inc.* at *1. It found "no evidence that Lastar had the actual authority to control the actions of Fibeax or Barger. The record contains no express contract to this effect. . . ." *Id.*

In this case, the contract between America First and Show Ready contains no language giving Show Ready authority to bind America First to any contract. There is no mention of America First in the contract between Show Ready and Clay Street. Other than walkthroughs when America First viewed the venue, Clay Street's dealings were entirely with Show Ready. They invoiced and received payment from Show Ready. Show Ready contacted Clay Street about changes to the contract.

There is no evidence that Show Ready acted as an agent for America First. They leased a venue and then provided this space to their client at a grossly inflated price. This is not an act of agency. The best way to determine whether Show Ready was America First's agent is to consider what would happen if the event occurred and Clay Street was forced to sue to recover the balance owed. If Show Ready was America First's agent, Clay Street could not sue Show Ready because, as an agent, it would not be liable for the contract. Clay Street could sue only America First, and America First would be liable. This would be true even if America First paid Show Ready the $22,000.00 they had been charged as the venue fee. This result would be unacceptable. The unacceptability of this hypothetical illustrates that Show Ready was an

10

independent contractor, not an agent of America First.

Because Show Ready was an independent actor contracting with Clay Street, not an agent of America First, there is no privity of contract, and the complaint against Clay Street must be dismissed.

c. **Show Ready failed to make its final payment to Clay Street and breached the contract.**

Even if this Court finds that Show Ready was arguably acting as an agent of America First, the breach of contract claim fails because Show Ready/America First failed to pay the balance due to Clay Street before beginning their load-in as required by Schedule A of the contract. A party that first breaches a contract "cannot maintain an action against the other contracting party for his subsequent breach or failure to perform." *Able Demolition v. City of Pontiac*, 275 Mich. App. 577, 585; 739 N.W.2d 696 (2007).

V.

CONCLUSION

There was no privity in contract between America First and Clay Street. America First contracted with Show Ready to serve as its production company. Part of Show Ready's responsibilities included providing a venue. To do so, they contracted with Clay Street to lease part of the Russell Industrial Center. They did not charge America First a finder's fee or commission; instead, they leased the space to America First at a 50% mark up. Had Clay Street not been paid, their claim would

have been against Show Ready, not America First. The inverse is also true: America First has no claim against Clay Street.

Even if this Court finds that there is privity between America First and Clay Street, America First/Show Ready breached its contract when it began the load-in prior to paying the balance owed to Clay Street. Because they were the first to breach the contract, they cannot maintain a breach-of-contract claim.

Respectfully Submitted,

*/s/ Ben M. Gonek*
BEN M. GONEK (P43716)
Law Office of Ben Gonek, PLLC
14290 Northline Rd.
Southgate, MI 48195
(313) 963-3377
ben@goneklaw.com

*/s/ James R. Gerometta*
JAMES R. GEROMETTA (P60260)
Law Office of James Gerometta, PLLC
27 E. Flint St.
Suite 2
Lake Orion, MI 48362
(313) 530-9505
james@geromettalaw.com

Dated: April 2, 2026

## <u>CERTIFICATE OF SERVICE</u>

James Gerometta hereby states that on the 1th day of April 2026, he caused the foregoing *Defendant's Motion for Summary Judgment*to be filed with the Court and that copies of same were forwarded to all counsel of record via the CM/ECF system.

<u>/s/ James R. Gerometta</u>
JAMES R GEROMETTA

Case 2:24-cv-12684-DPH-DRG ECF No. 18, PageID.253 Filed 04/02/26 Page 14 of 19
**Elite Communications, Inc. v. Lastar.Com, Inc., Not Reported in N.W. Rptr. (2004)**
2004 WL 94106

2004 WL 94106
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK
COURT RULES BEFORE CITING.

Court of Appeals of Michigan.

ELITE COMMUNICATIONS, INC., Plaintiff–Appellant,
v.
LASTAR.COM, INC., formerly known as
Cables to Go, Inc., Defendant–Appellee,
and
CITY OF WYANDOTTE, Defendant.

No. 241843.
|
Jan. 20, 2004.

Before: FORT HOOD, P.J., and BANDSTRA and METER, JJ.

[UNPUBLISHED]

PER CURIAM.

**\*1** Plaintiff appeals as of right from an order granting summary disposition to defendant Lastar.com, Inc., under MCR 2.116(C)(10). We affirm.

Plaintiff argues that the trial court erred in finding no genuine issue of material fact regarding the existence of an agency relationship between Eric Barger, the chief executive officer of Fibeax Constructors, Inc., a company providing cable installation services, and Lastar. The City of Wyandotte hired Lastar to install television cables, Lastar used Fibeax's services in doing so, and Fibeax, in turn, hired plaintiff to perform certain work. Despite an arbitration award entered against Fibeax and in favor of plaintiff, Fibeax apparently has not paid plaintiff for work plaintiff performed, and plaintiff is attempting to recover from Lastar the monies owed.

We review de novo a trial court's ruling with respect to a motion for summary disposition brought under MCR 2.116(C)(10). *Spiek v. Dep't of Transportation,* 456 Mich. 331, 337; 572 NW2d 201 (1998). When reviewing a motion for summary disposition brought under MCR 2.116(C)(10),

we review the affidavits, pleadings, depositions, admissions, and documentary evidence submitted by the parties in the light most favorable to the nonmoving party. *Stevenson v. Reese,* 239 Mich.App 513, 516; 609 NW2d 195 (2000). "The motion should be granted if the affidavits or other documentary evidence show that there is no genuine issue with respect to any material fact, and the moving party is entitled to judgment as a matter of law." *Id.*

"Where there is a disputed question of agency, any testimony, either direct or inferential, tending to establish agency creates a question of fact for the jury to determine." *Meretta v. Peach,* 195 Mich.App 695, 697; 491 NW2d 278 (1992). "An agency relationship may arise when there is a manifestation by the principal that the agent may act on his account." *Id.* "The test of whether an agency has been created is whether the principal has a right to control the actions of the agent." *Id.*

"The authority of an agent to bind the principal may be either actual or apparent. Actual authority may be express or implied. Implied authority is the authority which an agent believes he possesses." *Id.* at 698. "Apparent authority may arise when acts and appearances lead a third person reasonably to believe that an agency relationship exists," *id.* at 698–699, and "[a]pparent authority must be traceable to the principal and cannot be established by the acts and conduct of the agent." *Id.* at 699. "In determining whether an agent possesses apparent authority to perform a particular act, the court must look to all surrounding facts and circumstances." *Id.*

We find that no agency relationship existed between Lastar and Fibeax or Barger. There is no evidence that Lastar had the actual authority to control the actions of Fibeax or Barger. The record contains no express contract to this effect, and there is no evidence leading to the conclusion that Barger believed he had the authority to act on behalf of Lastar in his and Fibeax's dealings with plaintiff. While a letter addressed to the City of Wyandotte mentioned certain authority Fibeax had with respect to the cable installation project, this letter did not involve Fibeax's dealings with plaintiff. Moreover, in forming the contract with plaintiff, Fibeax's never mentioned Lastar or made any representations to plaintiff on behalf of Lastar. Fibeax's agreement with plaintiff was strictly between plaintiff and Fibeax and was independent of Fibeax's relationship with Lastar. Fibeax and its officers simply did not have actual authority, express or implied, to bind Lastar. [1]

Case 2:24-cv-12684-DPH-DRG ECF No. 18, PageID.254 Filed 04/02/26 Page 15 of 19

Elite Communications, Inc. v. Lastar.Com, Inc., Not Reported in N.W. Rptr. (2004)
2004 WL 94106

**\*2** Furthermore, Fibeax and its officers did not have apparent authority to act on behalf of Lastar. As noted, apparent authority arises if acts and appearances lead a third party reasonably to believe that an agency relationship exists. *Id.* at 698–699. Nothing occurred that would lead plaintiff reasonably to believe that Fibeax was an agent of Lastar. In fact, plaintiff's past president admitted that he did not even discover that Lastar was part of the project until the arbitration hearing involving plaintiff and Fibeax. Further, as noted above, the letter addressed to the City of Wyandotte that mentioned Barger and Fibeax did not involve plaintiff.

Plaintiff also claims that Barger was a partner of Lastar. Again, we disagree. A partnership is "a voluntary association of 2 or more persons ... to carry on as co-owners a business for profit...." MCL 449.6. "In determining whether a partnership exists, the focus is not on whether individuals subjectively intended to form a partnership, that is, it is unimportant whether the parties would have labeled themselves 'partners.' ' *Byker v. Mannes,* 465 Mich. 637, 638–639; 641 NW2d 210 (2002). "Instead, the focus is on whether individuals intended to jointly carry on a business for profit within the meaning of the Michigan Uniform Partnership Act, MCL § 449.1 *et seq.,* regardless of whether they subjectively intended to form a partnership." *Byker, supra* at 639. Profit sharing is prima facie evidence of a partnership that may be rebutted by showing that the payments were wages. MCL 449.7(4)(b).

There is no express agreement supporting the allegation that Barger was a partner of Lastar. Nor is there any evidence that Barger and Lastar intended to carry on together a business for profit. Fibeax had an ongoing business relationship with Lastar as a subcontractor installing computer network cables for certain accounts of Lastar. Fibeax was paid separately for each task performed. There is no indication in the Fibeax/Lastar agreement, or otherwise, that would indicate that Barger or Fibeax was a partner of Lastar. The pertinent documents signed by Barger were signed in his capacity as an officer of Fibeax and not in his individual capacity. Plaintiff has simply presented no evidence establishing that Barger and Lastar intended to carry on as co-owners a business for profit. We find no basis on which to reverse the trial court's ruling.

Plaintiff also argues that the trial court erred in dismissing plaintiff's unjust enrichment claim under the misconception that it lacked equitable power to grant relief. We disagree with plaintiff's assertion that reversal is required.

The essential elements of an unjust enrichment claim are: "(1) receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to [the] plaintiff because of the retention of the benefit by defendant." *Barber v. SMH (US), Inc,* 202 Mich.App 366, 375; 509 NW2d 791 (1993). "In such instances, the law operates to imply a contract in order to prevent unjust enrichment." *Id.* "However, a contract will be implied only if there is no express contract covering the same subject matter." *Id.*

**\*3** Here, the trial court found that plaintiff was never in privity of contract with Lastar, whether based on agency or partnership principles or otherwise, and it therefore dismissed plaintiff's claim for equitable relief. However, there need not be an agency or partnership relationship to find that a party has been unjustly enriched. A contract may be implied in order to prevent unjust enrichment when the defendant has received a benefit from the plaintiff that is inequitable to retain. *Id.* Therefore, the trial court erred in dismissing plaintiff's equitable claim based on the conclusion that there was no agency or partnership relationship between plaintiff and Lastar. However, as stated above, a contract will be implied only if there is no express contract covering the same subject matter. *Id.* Since there was an express contract covering the same subject matter, the contract between plaintiff and Fibeax, the trial court did not err in failing to imply a contract, albeit for the wrong reasons. An appellate court may affirm a circuit court's order if it reaches the right result for the wrong reasons. *Becker–Witt v Bd of Examiners of Social Workers,* 256 Mich.App 359, 365; 663 NW2d 514 (2003). Thus, we conclude the trial court did not err in dismissing plaintiff's unjust enrichment claim.

Affirmed.

**All Citations**

Not Reported in N.W. Rptr., 2004 WL 94106

---

**Footnotes**

---

Elite Communications, Inc. v. Lastar.Com, Inc., Not Reported in N.W. Rptr. (2004)

2004 WL 94106

1       We note that Fibeax and Lastar entered into an ongoing service agreement in 1996; this agreement specifies that no agency relationship exists between the two. Plaintiff argues that this agreement does not apply to the instant case because it refers to the installation of computer cables, whereas the instant case involved the installation of television cables. Lastar claims that it and Fibeax were indeed operating under this agreement in the instant case. The agreement, at the very least, indicates that Fibeax and Lastar had a history of treating their relationship as one that did not involve an agency relationship.

**End of Document**
© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 1314456
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK
COURT RULES BEFORE CITING.

UNPUBLISHED
Court of Appeals of Michigan.

PRUDENTIAL PROTECTIVE SERVICES,
LLC, Plaintiff–Appellee/Cross–Appellant,
v.
The NRP GROUP, LLC, Defendant–
Appellant/Cross–Appellee.

Docket No. 318957.
|
March 24, 2015.

Wayne Circuit Court; LC No. 13–001027–CK.

Before: BOONSTRA, P.J., and SAWYER and O'CONNELL,
JJ.

**Opinion**

PER CURIAM.

**\*1** Defendant appeals as of right an order granting summary
disposition to plaintiff in this contract dispute. We affirm
the trial court's grant of summary disposition to plaintiff,
but remand for the trial court to provide further explanation
regarding plaintiff's request for attorney fees.

On appeal, defendant argues that it is not liable for any amount
to plaintiff under the contract between the parties because
defendant was acting as an agent for a disclosed principal.
Specifically, defendant contends that there was a genuine
issue of material fact regarding whether it was personally
liable, because plaintiff was aware that it was actually dealing
with defendant's principals. Defendant argues that plaintiff
accepted payments from defendant's principals, and that it
was informed during contract negotiations that defendant was
merely an agent for individual property owners. We disagree.

Plaintiff moved for summary disposition pursuant to MCR
2.116(C)(9) and MCR 2.116(C)(10). This Court reviews a
trial court's decision on a motion for summary disposition de
novo. *Hoffner v. Lanctoe,* 492 Mich. 450, 459; 821 NW2d 88
(2012). "A motion for summary disposition brought pursuant

to MCR 2.116(C)(9) tests the sufficiency of the defendant's
pleadings by accepting all well-pleaded allegations as true.
Summary disposition under this rule is proper if the defendant
fails to raise a valid defense to a claim." *Wheeler v.
Charter Twp of Shelby,* 265 Mich.App 657, 663; 697 NW2d
180 (2005). " 'If the defenses asserted are so clearly
untenable as a matter of law that no factual development
could possibl[y] deny the plaintiff's right to recovery,' then
summary disposition under this rule is proper." *Id.,* quoting
*Dimondale v. Grable,* 240 Mich.App 553, 564; 618 NW2d 23
(2000). A motion for summary disposition pursuant to MCR
2.116(C)(10) "requires this Court to review the pleadings,
affidavits, and other documentary evidence submitted, make
all reasonable inferences therefrom, and determine whether a
genuine issue of material fact exists, giving the nonmoving
party the benefit of reasonable doubt." *Id.* (citations omitted).
In order to survive a motion for summary disposition under
this rule, the nonmoving party is required to produce evidence
demonstrating a material dispute of fact left for trial. *Id.*

"Unless otherwise agreed, a person making or purporting to
make a contract with another as agent for a disclosed principal
does not become a party to the contract." *Riddle v. Lacey
& Jones,* 135 Mich.App 241, 246; 351 NW2d 916 (1984),
quoting 2 Restatement Agency, 2d, § 320, p67. Further:

> Whether or not a person purporting
> to act as agent for another becomes
> a party to the contract depends upon
> the agreement between such person
> and the other party.... [A] principal is
> disclosed if, at the time of making the
> contract in question, the other party to
> it has notice that the agent is acting
> for a principal and of the principal's
> identity. One who purports to contract
> on behalf of a designated person does
> not manifest by this that he is making a
> contract on his own account, and only
> where he so manifests does the agent
> become a party to the contract which
> he makes for the principal. In the
> absence of other facts, the inference
> is that the parties have agreed that
> the principal is, and the agent is
> not, a party. [*Id.* at 246–247, quoting

2 Restatement Agency, 2d, § 320, comment *a*.]

**\*2** This Court has stated that "an agent may work on behalf of a principal within the scope of the agency agreement as if the agent had stepped into the shoes of the principal without incurring any personal liability." *PM One, Ltd. v. Dep't of Treasury,* 240 Mich.App 255, 266–267; 611 NW2d 318 (2000). However, this Court has also held that where a principal is disclosed and the agent is known to be working on behalf of the principal, the agent may still agree to be held personally liable under the terms of a contract. *National Trout Festival, Inc. v. Cannon,* 32 Mich.App 517, 521; 189 NW2d 69 (1971). Moreover, a "contract must be interpreted according to its plain and ordinary meaning." *Holmes v. Holmes,* 281 Mich.App 575, 593; 760 NW2d 300 (2008).

Defendant presented no evidence regarding its own contracts, if any existed, between it and the individual property owners for which defendant managed residential properties. Accordingly, the only evidence included in the lower court record is the parties' contract itself, Holly Powell's deposition and affidavit, and Theodore Einhorn's affidavit. Under the terms of the contract, there is no mention of any property owners; defendant is expressly noted as the "Client" for the purposes of the contract. Further, under the plain terms of the contract, defendant agreed "to pay [plaintiff] ... fees" based on the **services** provided. Defendant essentially relies on one piece of evidence to support its assertion that plaintiff was aware that defendant was an agent not subject to personal liability: Powell's statements that during contract negotiations, plaintiff was made aware that it was actually contracting with individual property owners, not defendant. Defendant also argues that plaintiff's practice of accepting payment in the form of checks from the property owners signifies that it knew it was dealing with the property owners as principals.

Even though plaintiff accepted checks from parties other than defendant for **services** provided under the contract, it appears from the record that defendant was responsible for actually making those payments. Defendant accepted invoices from plaintiff, defendant inputed the invoices into its internal computer systems, and defendant actually sent out the checks to plaintiff. Further, when invoices stopped being paid on time, plaintiff sought payment from defendant, and one of defendant's employees traveled to plaintiff's offices to discuss having some of the amount due reduced. Based

on the language of the contract, the only parties to the contract were plaintiff and defendant. There was no evidence presented that plaintiff ever worked or communicated with any other party relating to the contract, except for accepting checks emanating from the bank accounts of property owners. Even giving defendant the benefit of reasonable doubt, defendant expressly agreed to make payments for **services** provided under the contract, without mention of any principal. Accordingly, the trial court's decision to grant plaintiff's motion for summary disposition under MCR 2.116(C)(10) was correct because there was no genuine issue of material fact regarding whether defendant was personally liable under the contract.

**\*3** On cross-appeal, plaintiff argues that the trial court abused its discretion when it denied plaintiff's request for attorney fees. Specifically, plaintiff contends that the contract expressly provides for defendant to pay plaintiff's reasonable attorney fees in the event of a dispute arising from the contract. Plaintiff argues that the trial court erred when it denied plaintiff's request for attorney fees without providing any explanation or rationale. We agree.

Regarding an award of attorney fees, this Court reviews underlying findings of fact for clear error. *In re Temple Marital Trust,* 278 Mich.App 122, 128; 748 NW2d 265 (2008). Questions of law are reviewed de novo. *Id.* However, "we review the court's decision whether to award attorney fees and the determination of reasonableness of the fees for an abuse of discretion." *Id.*

Generally, attorney fees are not recoverable in Michigan as an element of costs or damages unless an express legal exception applies. *Fleet Business Credit v. Krapohl Ford Lincoln Mercury Co .,* 274 Mich.App 584, 589; 735 NW2d 644 (2007). "The parties to a contract may include a provision that the breaching party will be required to pay the other side's attorney fees and such provisions are judicially enforceable." *Zeeland Farm **Services**, Inc. v. JBL Enterprises, Inc.,* 219 Mich.App 190, 195; 555 NW2d 733 (1996). "However, recovery is limited to reasonable attorney fees." *Id.* at 195–196. The party claiming the right to an award of attorney fees is responsible for introducing evidence of the reasonableness of the attorney fees. *Id.* at 196. Attorney fees that are awarded pursuant to a contractual provision are considered damages, not costs. *Fleet Business Credit,* 274 Mich.App at 589.

In determining what amount of attorney fees is reasonable, this Court considers:

(1) the professional standing and experience of the attorney; (2) the skill, time and labor involved; (3) the amount in question and the results achieved; (4) the difficulty of the case; (5) the expenses incurred; and (6) the nature and length of the professional relationship with the client. [*Wood v. Detroit Auto Inter–Ins. Exchange,* 413 Mich. 573, 588; 321 NW2d 653 (1982).]

This Court also considers "the fee customarily charged in the locality for similar legal **services**" which should be "multiplied by the reasonable number of hours expended in the case." *Smith v.. Khouri,* 481 Mich. 519, 530–531; 751 NW2d 472 (2008). Under the terms of the contract, defendant agreed to "pay reasonable attorney and all collection agency and other fees and expenses which may be incurred by [plaintiff] in the collection of unpaid invoices or any part thereof." Further, in plaintiff's motion for summary disposition, plaintiff specifically addressed the *Wood* factors, ultimately requesting $3,500 in attorney fees. Though the trial court stated that plaintiff's request for attorney fees was denied, it provided no rationale or explanation, either at the hearing or in its order. Because the parties specifically included language in their contract regarding attorney fees, the trial court abused its discretion when it denied the request without explanation. Accordingly, the case is remanded so that the trial court can provide its reasoning on the record.

**\*4** Affirmed in part, but remanded for further proceedings regarding plaintiff's request for attorney fees. We do not retain jurisdiction.

**All Citations**

Not Reported in N.W.2d, 2015 WL 1314456

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

 © 2026 Thomson Reuters. No claim to original U.S. Government Works.