DocuSign Envelope ID: 7E7454E2-2255-4A3C-8CA1-1DE4022C2BB1

# Letter of Engagement Agreement

# America First Foundation & Show Ready Technologies, Inc.

This Letter of Agreement ("Agreement") is made effective on **Monday, March 4, 2024** by and between <u>Success Strategies Unlimited, Inc./DBA Show Ready Technologies, Inc.</u>, of <u>1865 Falls Pointe Lane, Ste 100, Commerce Twp, MI, with warehouses located at 3175 Ridgeway Ct, Walled Lake, MI 48390</u>, and <u>America First Foundation</u>, of <u>125 S Wacker Drive STE 300, Chicago 60606</u> are sometimes individually referred to as "Party" and collectively referred to as "Parties."

This letter ("Agreement") summarizes the "Parties" understanding of the agreement that we reached during our meeting on <u>Friday, March 1, 2024</u> as outlined as follows:

## 1. Agreement

It is understood that the "Parties" have agreed to the following:

- America First Foundation agrees to engage the services of Show Ready Technologies, Inc. as your exclusive Event Production Services Partner for all of your events throughout the United States, and will provide a $5,000 deposit for each event once scheduled. Upon payment of the deposit per event, Show Ready Technologies, Inc. will initiate research for the development of a cost estimate for that corresponding event. If for any reason the event is canceled, postponed, or the venue is changed, the $5,000 deposit is non-refundable and the cancellation policy below goes into effect.
- Further, America First Foundation agrees to the following payment terms & conditions for each scheduled event:
  - Upon completion of an approved cost estimate for each event, and no later than 60 days prior to the load in of said event, America First Foundation agrees to provide a $10,000 non-refundable deposit per event to be applied toward preproduction services for the corresponding event. If for any reason the event is canceled, postponed, or the venue is changed, the $10,000 deposit is non-refundable and the cancellation policy below goes into effect.
  - America First Foundation understands and agrees to the following cancellation policy for each event:
    - Cancellation or venue change 45 calendar days prior to first day of rental, travel or set-up (whichever occurs first); client is responsible for 50% of the total quoted price.
    - Cancellation or venue change 35 calendar days or less prior to first day of rental, travel or set-up (whichever occurs first); client is responsible for 100% of the total quoted price.
- The parties agree that any and all revisions to an approved estimate requires a written change order with authorized signatures of both parties.
- America First Foundation understands and agrees that changes to a venue will result in a change order and potential additional fees.

1

DocuSign Envelope ID: 7E7454E2-2255-4A3C-8CA1-1DE4022C2BB1

- America First Foundation understands and agrees that if this agreement is terminated for any reason, any and all deposits are non-refundable, full payment of all services initiated and rendered are immediately due and subject to the cancellation terms of set forth.

## 2. Term

The term of this Agreement ("Term") will commence as of **Monday, March 4, 2024**, and will continue in effect for **a period of 3 years**, at which point it shall terminate on **March 4, 2027**, unless the Term is extended or terminated earlier in a written document signed by both parties.

**Six months prior** to the expiration of this Agreement ("Term"), on or before **September 4, 2026**, the parties agree to notify each other in writing of their intent pursuant to the continuation or expiration of the Agreement.

## 3. Force Majeure

Neither party will be liable to the other for any loss, damage, or default occasioned by strike, civil disorder, governmental decree or regulation, acts of God, or any other force majeure (collectively, "Force Majeure Event"). The parties agree that upon conclusion of a Force Majeure Event, each party will use commercially reasonable means to recommence full performance of our obligations under this Agreement.

**4. Hold Harmless.** The parties shall fully defend, indemnify, and hold harmless the other party from any and all claims, lawsuits, demands, causes of action, liability, loss, damage, and/or injury, of any kind whatsoever (including without limitation all claims for monetary loss, property damage, equitable relief, personal injury, and/or wrongful death), whether brought by an individual or other entity, or imposed by a court of law or by administrative action of any federal, state, or local governmental body or agency, arising out of, in any way whatsoever, any acts, omissions, negligence, or willful misconduct on the part of either party, including its officers, owners, personnel, employees, agents, contractors, invitees, or volunteers. This indemnification applies to and includes, without limitation, the payment of all penalties, fines, judgments, awards, decrees, attorneys' fees, and related costs or expenses, and any reimbursements for all legal fees, expenses, and costs incurred by it.

2

DocuSign Envelope ID: 7E7454E2-2255-4A3C-8CA1-1DE4022C2BB1

## 5. Indemnification:

Show Ready Technologies, Inc. assumes no legal or financial responsibility for the content materials including, but not limited to video/film clips, power point, Keynote, animation, music or other items incorporated into any event as provided by you, the production company, producer and/or any of your clients or representatives. You and your company thereby agree to defend, indemnify and hold harmless Show Ready Technologies, Inc. and its employees, owners, affiliates, agents and assigns from and against any and all losses, costs, liabilities and expenses, including without limitation claims for copyright infringement and claims for violations of rights or publicity, made or brought against Show Ready Technologies, Inc. (or its employees, owners, affiliates, agents or assigns) arising out of the use of the copyrighted materials as part of the project and/or event.

## 6. Notice

At any time either party may terminate this agreement with a 30 day written notice to the other party either by personal delivery in writing or by mail, registered or certified, postage prepaid with return receipt requested to the addresses set forth in this Agreement unless one party notifies the other, in writing, of a change of address.  All contracted services must be paid in full upon notification of cancellation or termination.

## 7. No Other Agreement

This Letter of Agreement contains the entire agreement between us. No part of this Letter of Agreement may be changed, modified, amended, or supplemented except in a written document signed by both of us that specifically states that the document is being signed for the purposes of modifying this Agreement. Each of us acknowledges and agrees that the other has not made any representations, warranties, or agreement of any kind, except as is expressly described in this Agreement.

## 8. Governing Law

This Agreement shall be interpreted in accordance with the laws of <u>Michigan</u>. In interpreting this contract, we each hereby acknowledge that we have mutually agreed to the terms of this Agreement and thus waive the protections of any law or statute that provides that in the case of uncertainty not removed by the laws relating to the interpretation of the contracts, the language of a contract should be interpreted against the drafter of the contact. Further, we agree that in the event that any one or more of the provisions of this Agreement shall be found to be invalid, illegal, or unenforceable in any respect, the validity, legality, and enforceability of the remaining provisions contained herein shall not be in any way affected or impaired.

DocuSign Envelope ID: 7E7454E2-2255-4A3C-8CA1-1DE4022C2BB1

## 9. Attorney's Fees

We agree that if any action is commenced to enforce any claim, demand, debt, action, cause of action, liability, cost, right, duty, or obligation provided herein, or if any action is commenced to enforce any of the provisions of this Agreement, the prevailing party in such an action shall be entitled, in addition to any other remedies, to an award of out-of-pocket attorney's fees, including all actual costs incurred by the prevailing party.

## 10. Remedy of the Parties

Except as otherwise specifically provided for in this Agreement, in the event one of us is in default or in breach of any of the material provisions of this Agreement and fails to cure the default or breach within 10 days after written notice of such default or breach by the other, the non-breaching party shall have the right to terminate this Agreement.

## 11. Assignment

This Agreement shall only be assignable or transferable by one party upon the written approval from the other.

## 12. Relationship of the Parties

It is understood and agreed that this Agreement does not create a partnership, joint venture, or employment relationship of any kind between us; that each of us is acting as independent contractors with respect to each other; and that non no no in   e of the employees of either of us will be deemed to be employees of the other for any purpose.

## 13. Confidentiality

It is understood and agreed that the Parties would like to exchange certain information that may be considered confidential. To ensure the protection of such information and in consideration of the agreement to exchange said information, the parties agree as follows:

a) The confidential information to be disclosed by Disclosure under this Agreement ("Confidential Information") can be described as and includes:

Technical and business information relating to Discloser's proprietary ideas, patentable ideas copyrights and/or trade secrets, existing and/or contemplated products and services, software, schematics, research and development, production, costs, profit and margin information, finances and financial projections, customers, clients, marketing,

4

DocuSign Envelope ID: 7E7454E2-2255-4A3C-8CA1-1DE4022C2BB1

and current or future business plans and models, regardless of whether such information is designated as "Confidential Information" at the time of its disclosure.

In addition to the above, Confidential Information shall also include, and the Recipient shall have a duty to protect, other confidential and/or sensitive information which is (a) disclosed by Disclosure in writing and marked as confidential (or with other similar designation) at the time of disclosure; and/or (b) disclosed by Disclosure in any other manner and identified as confidential at the time of disclosure and is also summarized and designated as confidential in a written memorandum delivered to Recipient within thirty (30) days of the disclosure.

b) Recipient shall limit disclosure of Confidential Information within its own organization to its directors, officers, partners, members and/or employees having a need to know and shall not disclose Confidential Information to any third party (whether an individual, corporation, or other entity) without the prior written consent of Disclosure. Recipient shall have satisfied its obligations under this paragraph if it takes affirmative measures to ensure compliance with these confidentiality obligations by its employees, agents, consultants and others who are permitted access to or use of the Confidential Information.

c) This Agreement imposes no obligation upon Recipient with respect to any Confidential Information (a) that was in Recipient's possession before receipt from Disclosure; (b) is or becomes a matter of public knowledge through no fault of Recipient; (c) is rightfully received by Recipient from a third party not owing a duty of confidentiality to the Disclosure; (d) is disclosed without a duty of confidentiality to a third party by, or with the authorization of, Disclosure; or (e) is independently developed by Recipient.

d) Disclosure warrants that he/she has the right to make the disclosures under this Agreement.

e) This Agreement shall not be construed as creating, conveying, transferring, granting or conferring upon the Recipient any rights, license or authority in or to the information exchanged, except the limited right to use Confidential Information specified in paragraph 2. Furthermore and specifically, no license or conveyance of any intellectual property rights is granted or implied by this Agreement.

f) Neither party shall be liable to the other in any manner whatsoever for any decisions, obligations, costs or expenses incurred, changes in business practices, plans, organization, products, services, or otherwise, based on either party's decision to use or rely on any information exchanged under this Agreement.

## 14. Termination

Either party shall have the right, forthwith and without further notice, to terminate this Agreement by written notice to the other, upon the occurrence of any of the following events:

(a) A breach or default of a provision of this Agreement which is not cured within the period set forth in this Agreement;

5

DocuSign Envelope ID: 7E7454E2-2255-4A3C-8CA1-1DE4022C2BB1

(b) A Force Majeure Event that continues for a period of 30 days.

In the event of a termination, any money due on the date of termination shall be immediately due and payable.

**The parties agree with the terms of this Agreement as signed and dated by authorized legal representatives of the parties below:**

SHOW READY TECHNOLOGIES, INC.

_Deborah A. Kantor, President_    date: 3/6/24

_Paul W. Jones, Vice President_    date: 3/06/2024

DocuSigned by:
AMERICA FIRST FOUNDATION

_signature_    date: 3/6/2024

543F5BBD8C5A4EA...    date: _____

6