UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMERICA FIRST FOUNDATION,

                    PLAINTIFF,          Case No. 24-cv-12684

-vs-                                    Hon. DENISE PAGE HOOD

CLAY STREET ENTERTAINMENT,
LLC,

                    DEFENDANT,
_____/

### DEFENDANT'S RESPONSE TO AMERICA FIRST'S MOTION FOR SUMMARY JUDGMENT

I.

INTRODUCTION

Clay Street Entertainment, Inc (Clay Street) entered into a contract with Show Ready Technologies, Inc (Show Ready) allowing Show Ready to use Clay Street's Russell Event Center to produce a dinner and speaking event for Show Ready's client. Show Ready told Clay Street that this event was a corporate function and that minimal security would be necessary. Show Ready paid approximately half their total fee as a deposit, with the balance due before load in.

Load in began on June 12, 2024. The next day, Clay Street learned that Show Ready's client was not a corporation, but rather America First Foundation (America First), an extremist Christian nationalist organization  Its founder, Nick Fuentes,

1

routinely made racist, antisemitic and anti-LGBTQ statements. Learning this and realizing that Show Ready had failed to pay the balance of its rental fee, Clay Street cancelled its contract with Show Ready.

America First moves for summary judgment on the breach of contract claim contained in its amended complaint. America First claims that there are no factual disputes. This is simply incorrect. America First claims the following facts are undisputed:

> There is simply no dispute of material facts; to wit: it is undisputed that a contract was formed, it is undisputed that Plaintiff tendered the payment to Defendant for the rental of the venue, it is undisputed that Defendant had knowledge of the controversial nature of the event, it is undisputed that Defendant cancelled the contract by prohibiting Plaintiff to use the rented venue, and there is no evidence of fraud on the part of Plaintiff.

Plaintiff's Motion for Summary Judgment, ECF. No. 16, PageID 115.

Each and every fact alleged by the plaintiff to be undisputed is contested in this case.

- While a contract was formed between Show Ready and Clay Street, Clay Street disputes that it entered into a contract with America First and/or that Show Ready was an agent of America First [Defendant's Motion for Summary Judgment, ECF. 18].

- While it is undisputed that Show Ready tendered its deposit for use of the venue, it is further undisputed that Show Ready failed to pay the balance of the total charges before load in as required by the contract [id.].

- Clay Street disputes that it had knowledge of the nature of the event [affidavits of Karen Addison and Niko Matsamakis, Exhibits 1 and 2; Defendant's Response to Plaintiff's request for documents, ECF 16-2, PageID. 212-215 (text messages between Karen Addison and Kory Miller)].

- While Clay Street did prohibit America First's use of the venue, they did so after: (1) being misled about the nature of the event [see above]; and (2) failing to receive full payment on the contract from Show Ready [amended complaint, ECF 14, Paragraph 13; Defendants' response to Plaintiff's request for documents, ECF 16-2, PageID 147 (schedule A to contract between Show Ready and Clay Street, "Balance must be paid in full before load in")].

- America First and/or Show Ready misled Clay Street about the nature of the event [affidavits of Karen Addison and Niko Matsamakis, exhibits A and B; Defendant's response to Plaintiff's request for documents, ECF 16-2, PageID 212-215 (text messages between Karen Addison and Kory Miller)].

II.

WHO IS AMERICA FIRST AND NICK FUENTES?

America First describes itself in pleadings as a right of center organization championing the role of God in society and upholding the principles of nationalism, Christianity, and traditionalism. It is led by Nick Fuentes. In reality, Nick Fuentes is a white nationalist with a history of making racist, antisemitic and ant-LGBTQ

3

statements. He had hosted events for his followers in conjunction with the ultraconservative Conservative Political Action Conference, from which he has been removed because of his offensive views [*White nationalist Nick Fuentes is 'removed' from CPAC, chair of ultraconservative conference says*, NBC News, March 3, 2023[1]]. Because his stances on these topics are so offensive, he has had trouble finding venues to host his organization. In 2023, he held a rally in Washington, D.C. because he could not find a venue for a convention. He "got no play . . . in D.C." [*Nick Fuentes Holds Racist Conference Across from CPAC*, Hate Watch, Southern Poverty Law Center, March 4, 2023[2]].

Mr. Fuentes' statements include:

- At 30 he will find and marry a 16-year old, "Right when the milk is good, I want to start drinking the milk."[3]

- Woman should not have the right to vote, should not be in the workforce, and should wear veils in Church. "It is not enough to say we're against trannies; you have to be against women's right too."[4]

- He wished Hitler was alive so he could kill a Black man littering in his neighborhood.[5]

---

[1] Available at: https://www.nbcnews.com/politics/politics-news/white-nationalist-nick-fuentes-removed-ultra-conservative-cpac-event-c-rcna73311
[2] Available at: https://www.splcenter.org/resources/hatewatch/nick-fuentes-holds-racist-conference-across-cpac/
[3] Video at: Right when the milk is good, I want to start drinking the milk
[4] Video at: We want to go back to the middle ages
[5] Video at: https://www.mediamatters.org/media/4009294

4

- "All I want is a total Aryan victory." This was his response when accused of not being a true incel.[6]

- "Enough with the Jim Crow stuff. Who cares? 'Oh, I had to drink out of a different water fountain.' Big f—ing deal...oh no, they had to go to a different school...And even if it was bad, who cares?...it was better for them, it's better for us."[7]

Clay Street is unaware of who America First would have had speak at the Russell Event Center. However, after it cancelled the June 15, 2024, event Mr. Fuentes held a rally outside Huntington Place where the right-learning organization Turning Point USA was holding an event. There he was joined by David Duke, former grand wizard of the Knights of the Ku Klux Klan, and Lucas Gage, former chairman of the white nationalist group the National Youth Front.

III.

ARGUMENT

A. **America First has the burden of proof regarding establishing a valid contract with Clay Street; and they have provided no proof that Show Ready was their agent for purposes of contract**.

An agent is a person or entity with authority to act on behalf of a principal for

---

[6] Video at: All I want is revenge against my enemies and a total Aryan victory
[7] Video at: Jim Crow

purposes of contracting. An agent has a fiduciary duty to the principal. Restatement (Third) of Agency, § 1.01. To establish agency a proponent must prove both the agent's fiduciary duty to the principal and the authority of the proffered agent to conduct business on behalf of the alleged principal. *Varlesi v. Wayne State University*, 909 F.Supp.2d 827 (EDMI 2012). Michigan courts require a showing of direct day-to-day control over an agent by the principal. *Little v. Howard Johnson Co.,* 183 Mich.App. 675, 455, N.W.2d 390, 393 (1990). The party asserting the existence of an agency relationship has the burden of establishing its existence. Restat 3d of Agency, § 1.02, comment d.

As explained in Clay Street's motion for summary judgment, Show Ready was not an agent of America First. Clay Street incorporates by refence its arguments made in support of its motion for summary judgment into this response [ECF 18, Sec. IV(b)].

In support of its claim that there is no dispute that Show Ready was acting as an agent for America First, America First proffers a March 30, 2024, email from Show Ready to Karen Addison (an employee of Clay Street) in which they ask that all information pertaining to fees be sent directly to them because they are the "agency/production company" for our client [ECF 16-2, PageID. 137]. As the parties' characterization of their relationship and everyday verbiage does not control whether a legal agency relationship exists, this statement is irrelevant. Restatement

6

(Third) of Agency, § 1.02. As the contract between America First and Show Ready makes clear, the two companies had no intention of entering into an agency relationship as that relationship is defined by contract law [ECF 18-2, paragraph 12].

America First cites several conclusory statements in its complaint and affidavit in support of its motion for summary judgment to support its claim that Show Ready was its agent. However, America First does not cite any instances of control over the day-to-day actions of Show Ready that are necessary to demonstrate that Show Ready was its agent as opposed to an independent contractor who it hired to produce an event. While there is no doubt that Show Ready was producing an event on behalf of a client, and that Clay Street was aware of this, that is not enough to make Show Ready an agent of America First. While America First had input on the location of the event and required that the event meet certain specifications, it lacked day-to-day control over Show Ready's actions. "Mere 'general oversight' does not suffice" to establish an agent/principal relationship. *Varlesi*, 909 F.Supp.2d at 843 (quoting *Little v. Howard Johnson Co.,* 183 Mich.App. 675, 455, N.W.2d 390, 393 (1990)).  America First's motion for summary judgment does not contain any factual support showing America First had the necessary control over Show Ready to establish it was acting as its agent.

Moreover, Show Ready did not act as a fiduciary for America First. As a fiduciary, an agent has the duty to disclose material facts to the principal and must

act to maximize the benefit flowing to the principal from any transaction. *Murphy v. Inman*, 509 Mich. 132, 983 N.W.2d 354, 363 (2022). Show Ready made no effort to disclose material facts regarding the rental of the venue and did not act to maximize America First's benefit from the venue rental. As the March 30, 2024, email demonstrates, Show Ready made sure that America First was unaware of the cost of the venue rental, $14,396 [ECF 16-2, PageID. 147].

Rather than pass the actual cost of the venue onto America First, Show Ready charged America First $22,000 [Clay Street's motion for summary judgment, exhibit C, ECF 18-4]. Show Ready's inflated venue cost demonstrates that they were not acting in a fiduciary capacity toward America First. They were not an agent working in the best interest of America First for a fee or percentage. They were a separate entity engaged to produce an event for America First and attempting to maximize their own profit.

A real estate agent, knowing a client is willing to pay $500,000 for a home, cannot fail to disclose to a client that the asking price is $400,000 and keep the difference. This violates the fiduciary principle of agency. That is exactly what happened in this case and is dispositive evidence that Show Ready was not the agent of America First.

While Show Ready's event had to meet the specification provided by America First, America First did not have day-to-day oversight of Show Ready, and Show

Ready did not owe a fiduciary duty to America First. There was no agency relationship.

America First also claims that Clay Street's answer to its request for documents showing "Defendant never agreed to allow Success Strategies Unlimited, Inc. (d/b/a Show Ready Technologies, Inc.) and/or Plaintiff to rent space at the Russell Industrial Center for June14 to 15, 2024," is somehow dispositive to the question of whether Show Ready was America First's agent. It is not.

Clay Street does not have a burden to prove that they did not have a valid contract with America First. Rather, to prevail on a motion for summary judgment, America First must prove that it has a valid contract with Clay Street. America First cites *Celotex Corp v. Catrett*, 106 S.Ct. 2548 (1986) for the principal that Clay Street was required to produce evidence in discovery showing that no valid contract between the parties existed. This interpretation turns *Celotex* and the burden of proof in a breach of contract case on its head.

In *Celotex*, the Supreme Court held that Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and ***on which that party will bear the burden of proof at trial.***" *Celotex*, 106 S.Ct. at 2552 (emphasis added). Here, America First, as the plaintiff, is required to prove the existence of a valid contract. *Zwiker v. Lake*

9

*Superior State University*, 340 Mich.App. 448, 986 N.W.2d 427, 443 (2022). America First cannot simply state that Show Ready was their agent and then force Clay Street to provide evidence that disproves this summary claim. As the plaintiff and proponent of the agency theory, the burden rests on America First to prove agency and they have failed to do so. Summary judgment should be granted for Clay Street. See Defendant's Motion for Summary Judgment, ECF 18.

America First requested documents that would show that Clay Street did not have a valid contract with Show Ready and/or plaintiff. At the time this request was made America First was proceeding under a third-party beneficiary theory [complaint, ECF 1]. Despite their current argument that it was obvious and apparent to Clay Street that Show Ready was America First's agent, apparently America First did not realize that Show Ready was their agent until a year after they first filed suit against Clay Street. Now they seek to hold Clay Street's inability to anticipate this amended theory as an admission that Clay Street cannot dispute the claim Show Ready was acting as an agent of America First. Clay Street did not provide any documentation in answer to America First's request because, like America First, at the time it did not have any inclination that Show Ready was an agent of America First and did not review documents with an eye toward dispelling this hypothetical theory.[8] If America First were to prevail under this theory, it would be a gross

---

[8] Clay Street has provided all relevant documents to America First. It has done so because its initial discovery

misuse of Fed. R. Civ. P. 15(a)(2)'s liberal amendment policy.

B. **Show Ready breached any contract with Clay Street when it failed to pay the balance of its remaining fee before load in.**

Show Ready's contract with Clay Street required that they pay the balance of the remaining rental fee for he Russell Event Center in full before load in. The load in was originally scheduled for Friday, June 14, 2024 [ECF 16-2, PageID.147]. However, through an exchange of emails from April 4, 2024, through April 10, 2024, the parties later agreed to move the load in to Thursday, June 13, 2024, at the cost of $1,000 to Show Ready [ECF 16-2, PageID. 158-160]. Per America First's own admission, the load in actually began on June 12, 2024 [ECF 16-1, paragraph 19, affidavit of Jasiah Helm]. America First's amended complaint correctly states that Show Ready paid the deposit for the venue [ECF 14, paragraph 13], however, they do not and cannot allege that Show Ready or America First paid the remaining balance prior to load in.

Payment of the balance on short-term rental contracts is required before load in because, once the event has started, the property owner is left with few options to enforce its end of the contract. Evicting an entire gathering of over 1,000 people from a venue like the Russell Event Center if is difficult or impossible. Any eviction

---

production was over inclusive. It has not gone back and attempted to recategorize documents based on America First's new found theory of privity of contract.

must happen during load in, when all that is necessary is to remove the event staff from the venue. That is what happened here and that is why the requirement that the balance be paid in full before load in was specified in the contract.

**C. Show Ready/America First misled Clay Street regarding the nature of the event taking place at the Russell Event Center.**

Show Ready approached Clay Street about the possibility of hosting a corporate event. They indicated that because the crowd would consist of middle-aged businessmen, less security than average was needed [exhibit A and B to this motion, affidavits of Niko Matsamakis and Karen Addison]. Based on these representations, Clay Street agreed to rent its venue to Show Ready.

On June 13, 2024, Clay Street employee Karen Addison learned that Show Ready/America First had hired off duty police officers to perform armed security at the event. She asked the officers why they were necessary because it was scheduled as a corporate event [exhibit C, emails between America First, Show Ready and Showtime Security, LLC]. An officer responded that the venue did not know what they were getting into and showed her a video of Mr. Fuentes. At the same time Ms. Addison became aware that there was discussion on social media regarding the nature of the event to be held and about possible protest [exhibit B, affidavit of Karen Addison]. Text exchanges between Ms. Addison and Mr. Miller of Show Ready the night of June 13, 2024, make it clear that Clay Street did not know the

identity of Show Ready's client or the true nature of the event [ECF 16-2, PageID. 212-215].

During this same time frame, another Clay Street employee, Niko Matsamakis, noticed the Christian imagery being set up.  He asked Mr. Miller what kind of event it was and if the bars were necessary. Mr. Miller first stated it was a corporate event, then stated it was a Christian event, but that the attendees would drink beer so the bars should stay up. After this conversation he spoke to Ms. Addison and learned about the security concerns and the social media postings about the event.

Mr. Matsamakis and Ms. Addison decided to cancel the event. They did so because: (1) they were unaware that separate armed security was going to be present at the event and Clay Street did not allow this; (2) they were worried about protest and violence at the event; (3) they were concerned about damage to the Russell Event Center's reputation based on the nature of the event; (4) they were concerned about exposing their staff, many of whom are members of minority groups, to Mr. Fuentes' rhetoric; and (5) Show Ready had not paid the balance on its rental agreement and they were afraid that they would be unable to collect that balance if something went wrong at the event.

Mr. Matsamakis and Ms. Addison's affidavits establish a factual dispute regarding whether or not Clay Street was fraudulently induced to enter into a

contract. Their affidavits are supported by Ms. Addison's text with Kory Miller of Show Ready in which she expresses shock and confusion regarding the nature of the event.

IV.

CONCLUSION

America First's motion for summary judgment borders on frivolous.

America First was not party to the contract between Show Ready and Clay Street. Its agency theory is not supported by any evidence of day-to-day control on the part of America First or a fiduciary duty on the part of Show Ready as required to establish agency under Michigan law.

Show Ready failed to make its required payment under the contract, a contract which set a clear deadline for payment.

Finally, Show Ready and America First hid the true nature of the event from Clay Street in order to induce them to enter into a contract with Show Ready. This fraudulent inducement was necessary because venues, like and including the Russell Event Center (Clay Street), would not book Mr. Fuentes due to his offensive beliefs.

For all the above reasons America First's motion for summary judgment should be denied.

Respectfully Submitted,


*/s/ Ben M. Gonek*
BEN M. GONEK (P43716)
Law Office of Ben Gonek, PLLC
14290 Northline Rd.
Southgate, MI 48195
(313) 963-3377
ben@goneklaw.com

*/s/ James R. Gerometta*
JAMES R. GEROMETTA (P60260)
Mogill, Lemanski & Gerometta, PLLC
27 E. Flint St.
Suite 2
Lake Orion, MI 48362
(313) 530-9505
james@geromettalaw.com


Dated:  April 13, 2026

15

## **CERTIFICATE OF SERVICE**

James Gerometta hereby states that on the 13th day of April 2026, he caused the foregoing *Defendant's Response to Plaintiff's Motion for Summary Judgment*to be filed with the Court and that copies of same were forwarded to all counsel of record via the CM/ECF system.

/s/ James R. Gerometta
JAMES R GEROMETTA

16