## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| **AMERICA FIRST FOUNDATION,** | **Case No. 2:24-CV-12684-DPH-DRG** |
| Plaintiff, | **Hon. Denise Page Hood** |
| v. | **Mag. David R. Grand** |
| **CLAY STREET ENTERTAINMENT, LLC,** | |
| Defendant. | |

**BRISTOW LAW, PLLC**
Kyle J. Bristow (P77200)
P.O. Box 453
St. Clair, MI 48079
(T):  (248) 838-9934
(F):  (586) 408-6384
(E):  bristowlaw@gmail.com
*Attorney for America First Foundation*

**LAW OFFICE OF BEN GONEK, PLLC**
Ben M. Gonek (P43716)
14290 Northline Rd.
Southgate, MI 48195
(T):  (313) 963-3377
(F):  (313) 924-1284
(E):  ben@goneklaw.com
*Attorney for Clay Street Entertainment, LLC*

**LAW OFFICE OF JAMES GEROMETTA**
James R. Gerometta (P60260)
27 E. Flint St., Ste. 2
Lake Orion, MI 48362
(T):  (313) 899-7826
(E):  james@geromettalaw.com
*Attorney for Clay Street Entertainment, LLC*

---

### PLAINTIFF AMERICA FIRST FOUNDATION'S ANSWER TO DEFENDANT CLAY STREET ENTERTAINMENT, LLC'S MOTION FOR SUMMARY JUDGMENT

NOW COMES America First Foundation ("Plaintiff"), by and through Attorney Kyle J. Bristow, and hereby propounds upon Clay Street Entertainment, LLC ("Defendant"), and this Honorable Court Plaintiff America First Foundation's Answer to Defendant Clay Street Entertainment, LLC's Motion for Summary Judgment:

For the reasons set forth in the attached Brief, the Court should deny Defendant's Motion for Summary Judgment (ECF No. 18, PageID. 240-296) *en toto* for the reason that the undisputed facts and applicable law do not entitle Defendant to summary judgment.

WHEREFORE, Plaintiff prays that this Honorable Court will deny Defendant's Motion *en toto*.

Respectfully submitted,

**BRISTOW LAW, PLLC**

/s/ Kyle J. Bristow
Kyle J. Bristow (P77200)
P.O. Box 453
St. Clair, MI 48079
(T):  (248) 838-9934
(F):  (586) 408-6384
(E):  bristowlaw@gmail.com
*Attorney for America First Foundation*

Dated:  April 14, 2026

2

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**AMERICA FIRST FOUNDATION,**

    Plaintiff,

    v.

**CLAY STREET ENTERTAINMENT, LLC,**

    Defendant.

**Case No. 2:24-CV-12684-DPH-DRG**

**Hon. Denise Page Hood**

**Mag. David R. Grand**

---

**BRISTOW LAW, PLLC**
Kyle J. Bristow (P77200)
P.O. Box 453
St. Clair, MI 48079
(T):  (248) 838-9934
(F):  (586) 408-6384
(E):  bristowlaw@gmail.com
*Attorney for America First Foundation*

**LAW OFFICE OF BEN GONEK, PLLC**
Ben M. Gonek (P43716)
14290 Northline Rd.
Southgate, MI 48195
(T):  (313) 963-3377
(F):  (313) 924-1284
(E):  ben@goneklaw.com
*Attorney for Clay Street Entertainment, LLC*

**LAW OFFICE OF JAMES GEROMETTA**
James R. Gerometta (P60260)
27 E. Flint St., Ste. 2
Lake Orion, MI 48362
(T):  (313) 899-7826
(E):  james@geromettalaw.com
*Attorney for Clay Street Entertainment, LLC*

---

## PLAINTIFF AMERICA FIRST FOUNDATION'S BRIEF IN SUPPORT OF ITS ANSWER TO DEFENDANT CLAY STREET ENTERTAINMENT, LLC'S MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

I.  TABLE OF AUTHORITIES....................................................................................2

II.  ISSUE PRESENTED ........................................................................................4

III.  STATEMENT OF FACTS ................................................................................4

IV.  LAW & ARGUMENT ......................................................................................4

   A.  STANDARD OF REVIEW ..........................................................................4

   B.  PRINCIPAL POINT OF ARGUMENT.........................................................5

      1.  PRIVITY OF CONTRACT EXISTS BETWEEN PLAINTIFF AND DEFENDANT VIA AGENCY THEORY ......................................5

      2.  PLAINTIFF DID NOT MATERIALLY BREACH THE CONTRACT AS OF THE DATE DEFENDANT TERMINATED PLAINTIFF'S RENTAL OF DEFENDANT'S VENUE ........................11

      3.  A BINDING CONTRACT WAS FORMED AS A MATTER OF LAW THROUGH THE PARTIES' CONDUCT....................................21

V.  PRAYER FOR RELIEF....................................................................................23

## I. TABLE OF AUTHORITIES

**Statutory Law**

MCL 566.106 ...............................................................................................22

**Case Law**

*Alar v. Mercy Mem'l Hosp.*, 208 Mich. App. 518, 529 N.W.2d 318
(1995) ..................................................................................................6

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ...................................4

*Capital Dredge & Dock Corp. v. City of Detroit*, 800 F.2d 525 (6th Cir.
1986) ................................................................................................10

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)...............................................4

*David v. Serges*, 373 Mich. 442, 129 N.W.2d 882 (1964) ............................10

*Erickson v. Goodell Oil Co.*, 384 Mich. 207, 180 N.W.2d 798 (1970) ........21

*Featherston v. Steinhoff*, 226 Mich. App. 584, 575 N.W.2d 6 (1997)..........21

*In re NM Holdings Co., LLC*, 622 F.3d 613 (6th Cir. 2010).........................8

*Little v. Howard Johnson Co.*, 183 Mich.App. 675, 455 N.W.2d 390
(1990) ..................................................................................................9

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574
(1986) .............................................................................................5, 20

*Meretta v. Peach*, 195 Mich. App. 695, 491 N.W.2d 278 (1992)..........5-6, 10

*Michaels v. Amway Corp.*, 206 Mich. App. 644, 522 N.W.2d 703
(1994) ................................................................................................12

*Omnicom of Mich. v. Giannetti Inv. Co.*, 221 Mich. App. 341, 561
N.W.2d 138 (1997) ...........................................................................12

*Quality Prods. & Concepts Co. v. Nagel Precision, Inc.*, 469 Mich. 362, 666 N.W.2d 251 (2003) ..........................................................................13

*Saums v. Parfet*, 270 Mich. 165, 258 N.W. 235 (1935) ...................................6

*St. Clair Intermediate Sch. Dist. v. Intermediate Educ. Ass'n/Mich. Educ. Ass'n*, 458 Mich. 540, 581 N.W.2d 707 (1998) ..............................6

*Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478-1480 (6th Cir. 1989) ...............................................................................................5

*Temborious v. Slatkin*, 157 Mich. App. 587, 403 N.W.2d 821 (1986) .........21

*Walker & Co. v. Harrison*, 347 Mich. 630, 81 N.W.2d 352 (1956) ..12, 14-16

## Court Rules

Fed. R. Civ. P. 56 ................................................................................4

Fed. R. Civ. P. 56(a) .........................................................................4-5

## Miscellaneous Authorities

None cited

3

## II.  ISSUE PRESENTED

1. Whether the Court should enter summary judgment in favor of Defendant and against Plaintiff for Plaintiff's sole count of breach of contract?

> Plaintiff's Response:                    No.
>
> Defendant's Response:                   Yes.
>
> The Court Should Answer:            No.

## III.  STATEMENT OF FACTS

The Statement of Facts section of Plaintiff America First Foundation's Brief in Support of its Motion for Summary Judgment (ECF No. 16, PageID. 99-108) and the Exhibits attached thereto (ECF No. 16-1, PageID. 119-128; ECF No. 16-2, PageID. 129-237) are incorporated by reference as if fully set forth herein.

## IV.  LAW & ARGUMENT

### A.  STANDARD OF REVIEW

Fed. R. Civ. P. 56(a) pertinently provides that "A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."

The seminal cases interpreting Fed. R. Civ. P. 56 are *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), and

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).  See *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478-1480 (6th Cir. 1989) (providing an excellent analysis of Fed. R. Civ. P. 56(a) motion practice).

## B.  PRINCIPAL POINT OF ARGUMENT

In Defendant's Motion for Summary Judgment, Defendant argues that Defendant is entitled to summary judgment on the basis that (1) there is allegedly no privity of contract between Plaintiff and Defendant and (2) any valid contract which was breached was allegedly first breached by a party other than Defendant and Defendant was thus entitled to repudiate the contract.  (ECF No. 18, PageID. 243, 246-250).  For the reasons that follow, Defendant is factually incorrect and legally wrong.

### 1.  PRIVITY OF CONTRACT EXISTS BETWEEN PLAINTIFF AND DEFENDANT VIA AGENCY THEORY

Defendant's argument that no privity of contract exists between Plaintiff and Defendant is both factually untenable and legally incorrect.  The undisputed material evidence establishes that Show Ready Technologies, Inc., acted as Plaintiff's agent in procuring the venue, that Plaintiff's representatives personally interacted with Defendant's representatives to discuss Plaintiff's use of the venue, and that Defendant knew it was contracting for Plaintiff to host a controversial speaking engagement.

5

Under Michigan law, a principal is bound by the acts of an agent within the scope of the agent's actual or apparent authority. *Meretta v. Peach*, 195 Mich. App. 695, 698, 491 N.W.2d 278 (1992).[1]  Further, where an agent acts on behalf of a disclosed principal, the contract is between the principal and the third party—not the agent. *St. Clair Intermediate Sch. Dist. v. Intermediate Educ. Ass'n/Mich. Educ. Ass'n*, 458 Mich. 540, 557, 581 N.W.2d 707 (1998).  Said *Saums v. Parfet*, 270 Mich. 165, 170-171, 258 N.W. 235 (1935), agency "includes every relation in which one person acts for or represents another by his authority."

Apparent authority arises where the principal's conduct would lead a reasonable person to believe that the agent is authorized to act on the principal's behalf. *Alar v. Mercy Mem'l Hosp.*, 208 Mich. App. 518, 528, 529 N.W.2d 318 (1995).  "[A]pparent authority must be traceable to the principal and cannot be established by the acts of the agent alone." *Id.*

Here, the record establishes both actual and apparent authority. Plaintiff expressly retained Show Ready Technologies, Inc., to procure a venue, and Show Ready Technologies, Inc., acted within the scope of that authority throughout the transaction. (ECF No. 16-1, PageID. 120, ¶¶ 5-6, PageID. 121, ¶¶ 7-9, PageID. 123,

---

[1] Agency law—both actual and apparent—is described in detail in *Meretta*, 195 Mich. App. at 698-699.

¶ 15, PageID. 122, ¶¶ 12 and 14; ECF No. 16-2, PageID. 137-138; ECF No. 16-2, PageID. 154).

Even more fatal to Defendant's position, Defendant had actual knowledge that Show Ready Technologies, Inc., was acting on behalf of Plaintiff.  Defendant's own records reflect that Show Ready Technologies, Inc., expressly identified itself as "the agency/production company of record ***for our client***" (emphasis added) and that it was "handling all payments" on Plaintiff's "behalf."  (ECF No. 16-2, PageID. 137-138).  If Show Ready Technologies, Inc., was not acting as Plaintiff's agent, then Show Ready Technologies, Inc., would not be "handling payments" on "behalf" of anyone.  Defendant accepted this arrangement without objection.

Defendant's knowledge of the agency relationship is further confirmed by:

- Direct, in-person interactions with Plaintiff's representatives;

- Multiple walkthroughs of the venue involving both Plaintiff's representatives and Defendant's representatives;

- Unambiguous communications regarding the political nature of the event; and

- Defendant's acceptance of a $7,198 deposit paid on Plaintiff's behalf.

(ECF No. 14, PageID. 76, ¶ 12; ECF No. 16-1, PageID. 121, ¶ 7; ECF No. 14, PageID. 76, ¶ 12; ECF No. 16-1, PageID. 121, ¶ 8; ECF No. 14, PageID. 77, ¶ 15; ECF No. 14, PageID. 77, ¶ 15; ECF No. 16-1, PageID. 122, ¶ 14).

Critically, the sworn Affidavit of Jasiah Helm establishes that Plaintiff's representatives expressly disclosed to Defendant's agent, Karen Addison[2], the identity of Plaintiff, the political nature of the organization, and the controversial nature of the planned event during the walkthroughs. (ECF No. 16-1, PageID. 119-128).

Federal courts applying Michigan law reject defendants' attempts to avoid contractual liability under similar circumstances as those which are present in the instant case. See *In re NM Holdings Co., LLC*, 622 F.3d 613, 620 (6th Cir. 2010) ("A corporation can only act through its employees and, consequently, the acts of its employees, within the scope of their employment, constitute the acts of the corporation. Likewise, knowledge acquired by employees within the scope of their employment is imputed to the corporation."). For purposes of the instant case, Defendant's employees had actual knowledge that Show Ready Technologies, Inc., was "handling payments" on "behalf" of Plaintiff since the email correspondence demonstrates the same and Plaintiff's representatives in fact personally met with Defendant's employees to discuss Plaintiff's use of the venue. Defendant, as a

---

[2] Karen Addison's legal name is believed to be Karen Boswell, but she went by Karen Addison for purposes of her interactions with Plaintiff. (ECF No. 16-2, PageID. 133, Response to Request for Production of Documents No. 7 ("Ms. Boswell is the same person as Ms. Addison[.]")). As such, she will be referred to as Karen Addison for purposes of this Brief.

corporate entity, knew that Plaintiff was the contracting party, because Defendant's employees knew the same based upon the record evidence.

Defendant cannot meet with Plaintiff's representatives, accept Plaintiff's deposit, reserve the venue, coordinate event logistics over a period of months, and then disclaim the existence of a contractual relationship.  Michigan law does not permit such gamesmanship.

Defendant's reliance on caselaw purporting to defeat privity is misplaced and readily distinguishable.  The authorities cited by Defendant involve circumstances where (1) the principal was undisclosed, (2) the alleged agent lacked authority, or (3) the contracting party had no knowledge it was dealing with a principal through an agent.  None of those circumstances are present here.

In this case, the principal was expressly disclosed when Plaintiff's Nicholas J. Fuentes and Jasiah Helm personally met with Defendant's employees during the initial walkthrough of the venue, Show Ready Technologies, Inc., acted precisely within the scope of its authority, and—most critically—Defendant had actual knowledge of the agency relationship as established by Jasiah Helm's sworn testimony.  Accordingly, Defendant's cited authorities are factually inapposite and do not support summary judgment.

Defendant—citing *Little v. Howard Johnson Co.*, 183 Mich.App. 675, 455 N.W.2d 390 (1990)—improperly relies on the "right to control" test, which is

applied in tort cases to determine vicarious liability. In the context of contract law, however, the relevant inquiry is whether the alleged agent had actual or apparent authority to bind the principal, not whether the principal controlled the agent's every day-to-day operation. See *Meretta*, 195 Mich. App. at 698-699. Likewise, Defendant's contention that an independent contractor cannot serve as an agent to bind their principal to an agreement under agency law (ECF No. 18, PageID. 249-250) is simply legally wrong. See, e.g., *United States v. Silk*, 331 U.S. 704, 714 fn. 8 (1947) ("Generally, * * * lawyers * * * are independent contractors[.]"); *Agema v. City of Allegan*, 826 F.3d 326, 334-334 (6th Cir. 2016) (holding that a lawyer can bind their client to a settlement agreement); *Jackson v. Wayne Circuit Judge*, 341 Mich. 55, 59, 67 N.W.2d 471 (1954) (noting that it is presumed an attorney has authority to act on behalf of their client).

Even assuming arguendo that Defendant could create a factual dispute regarding the scope of Show Ready Technologies, Inc.'s authority—which it cannot—the record also establishes ratification as a matter of law. Under Michigan law, ratification occurs when a principal, with full knowledge of the material facts, accepts the benefits of an unauthorized act of its agent. See *David v. Serges*, 373 Mich. 442, 444, 129 N.W.2d 882 (1964); see also *Capital Dredge & Dock Corp. v. City of Detroit*, 800 F.2d 525, 530 (6th Cir. 1986) (applying Michigan law) ("Failure

10

to repudiate an unauthorized agreement and accepting the benefits of such an agreement can constitute a ratification.").

For the instant controversy, Plaintiff funded the transaction, proceeded with performance, and incurred substantial costs in reliance upon the agreement, while Defendant accepted the deposit, scheduled the event, and coordinated logistics for months. Under these circumstances, any alleged defect in agency authority is cured by ratification as a matter of law.

Based upon the record evidence Plaintiff has submitted and applicable law concerning agency and Defendant's actual knowledge that Show Ready Technologies, Inc., was acting as Plaintiff's agent for Plaintiff's planned controversial speaking engagement, and based upon Defendant and Plaintiff both proceeding under the terms of that agreement, Defendant is not entitled to summary judgment. Accordingly, Defendant's lack of privity argument fails both pursuant to the applicable facts and as a matter of law.

**2. PLAINTIFF DID NOT MATERIALLY BREACH THE CONTRACT AS OF THE DATE DEFENDANT TERMINATED PLAINTIFF'S RENTAL OF DEFENDANT'S VENUE**

Defendant's alternative argument—that it was entitled to cancel the contract due to a prior material breach on the part of Plaintiff—is unsupported by the record evidence and also fails as a matter of law.

11

Under Michigan law, a party is excused from performance only where the other party commits a material breach—that is, a breach that substantially defeats the purpose of the contract. *Omnicom of Mich. v. Giannetti Inv. Co.*, 221 Mich. App. 341, 348, 561 N.W.2d 138 (1997). Said the *Omnicom* court:

> In order to warrant rescission of a contract, there must be a material breach affecting a substantial or essential part of the contract. *Holtzlander v. Brownell*, 182 Mich.App. 716, 721, 453 N.W.2d 295 (1990). In determining whether a breach is material, the court should consider whether the nonbreaching party obtained the benefit it reasonably expected to receive. *Id*. at 722, 453 N.W.2d 295. Other considerations include the extent to which the injured party may be adequately compensated for damages for lack of complete performance, the extent to which the breaching party has partly performed, the comparative hardship on the breaching party in terminating the contract, the willfulness of the breaching party's conduct, and the greater or lesser uncertainty that the party failing to perform will perform the remainder of the contract. *Walker & Co. v. Harrison*, 347 Mich. 630, 635, 81 N.W.2d 352 (1957).

*Omnicom of Mich. v. Giannetti Inv. Co.*, 221 Mich. App. at 348.

As was noted in *Michaels v. Amway Corp.*, 206 Mich. App. 644, 650-651, 522 N.W.2d 703 (1994):

> "The rule in Michigan is that one who first breaches a contract cannot maintain an action against the other contracting party for his subsequent breach or failure to perform." *Flamm v. Scherer*, 40 Mich.App. 1, 8-9, 198 N.W.2d 702 (1972). See also *Nat'l Teleinformation Network, Inc. v. Michigan Public Service Comm.*, 687 F. Supp. 330, 337 (W.D. Mich. 1988); 5 Callaghan's Michigan Civil Jurisprudence, § 249, pp. 809-810. However, that rule only applies when the initial breach is substantial. *Baith v. Knapp-Stiles, Inc.*, 380 Mich. 119, 126, 156 N.W.2d 575 (1968). See also Callaghan's, supra, § 249, p. 810.

Moreover, a party may waive a claimed breach by continuing to accept performance or benefits under the contract. *Quality Prods. & Concepts Co. v. Nagel Precision, Inc.*, 469 Mich. 362, 666 N.W.2d 251, 258-259 (2003).

Defendant has not identified any specific contractual provision that Plaintiff allegedly *substantially* breached, nor has Defendant cited any admissible record evidence establishing such a *substantial* breach. The undisputed facts demonstrate the opposite—Plaintiff was actively performing by investing significant sums of money and time into planning Plaintiff's annual conference:

- Plaintiff, by and through Show Ready Technologies, Inc., paid the required deposit, which Defendant in fact accepted without objection;

- Plaintiff coordinated extensively with Defendant regarding logistics and security for a period of months before the planned event;

- Plaintiff and its agents began preparing the venue on-site immediately prior to the scheduled event; and

- Defendant only cancelled the event after Plaintiff and its agents were on-site and were in the process of setting up for the event, and only after third-parties complained about Plaintiff's political views.

(ECF No. 14, PageID. 77, ¶ 13; ECF No. 16-2, PageID. 141-142; ECF No. 16-2, PageID. 143-150; ECF No. 14, PageID. 77, ¶ 15; ECF No. 16-1, PageID. 122, ¶ 14; ECF No. 16-2, PageID. 154; ECF No. 16-2, PageID. 163-164; ECF No. 16-2,

13

PageID. 223- pp. 223-233; ECF No. 16-1, PageID. 123, ¶ 17; ECF No. 16-1, PageID. 124, ¶ 19; ECF No. 14, PageID. 79, ¶ 21; ECF No. 16-1, PageID. 124, ¶ 20).

In *Walker & Co. v. Harrison*, 347 Mich. 630, 635, 81 N.W.2d 352 (1956), for purposes of determining whether a breach legally justifies repudiation, the Michigan Supreme Court said:

> What is our criterion for determining whether or not a breach of contract is so fatal to the undertaking of the parties that it is to be classed as 'material'? There is no single touchstone. Many factors are involved. They are well stated in section 275 of Restatement of the Law of Contracts in the following terms:
>
>> 'In determining the materiality of a failure fully to perform a promise the following circumstances are influential:
>>
>>> '(a) The extent to which the injured party will obtain the substantial benefit which he could have reasonably anticipated;
>>>
>>> '(b) The extent to which the injured party may be adequately compensated in damages for lack of complete performance;
>>>
>>> '(c) The extent to which the party failing to perform has already partly performed or made preparations for performance;
>>>
>>> '(d) The greater or less hardship on the party failing to perform in terminating the contract;
>>>
>>> '(e) The wilful, negligent or innocent behavior of the party failing to perform;
>>>
>>> '(f) The greater or less uncertainty that the party failing to perform will perform the remainder of the contract.'

14

Applying the governing factors, any alleged untimely payment at issue for the instant controversy is plainly not material.  First, Defendant received the benefit it reasonably expected—namely, a substantial deposit and months of coordinated event planning.  Second, Plaintiff had substantially performed by funding the expensive event, engaging vendors, and preparing the venue.  Third, Defendant could have been fully compensated through ordinary contract remedies for any outstanding balance instead of cancelling the entire event.  The alleged delay of Defendant receiving $7,198.00 (ECF No. 18-3, PageID. 275) from Plaintiff wildly pales in comparison to the damages Plaintiff suffered in excess of $600,000.00. Under these circumstances, no reasonable jury could conclude that any alleged nonpayment issue "substantially defeated" the purpose of the agreement, and Defendant's first substantial breach theory fails as a matter of law.

In *Walker & Co.*, the defendants—who were in the dry-cleaning business— had a dispute with the plaintiff—who was in the sign rental and servicing business— about payment and the defendants' signs being maintained.  *Walker & Co. v. Harrison*, 347 Mich. at 631-632.  The defendants' sign was hit with a tomato, it rusted, spiders built cobwebs on it, and children vandalized it.  *Id*. at 632.  The defendants stopped paying the plaintiff, and the plaintiff sued after defendant repudiated the agreement.  *Id*. at 633-634.  The Michigan Supreme Court noted that "the injured party's determination that there has been a material breach, justifying

15

his own repudiation, is fraught with peril, for should such determination, as viewed by a later court in the calm of its contemplation, be unwarranted, the repudiator himself will have been guilty of material breach and himself have become the aggressor, not an innocent victim." *Id* at 635. The Michigan Supreme Court held that the *Walker & Co.* plaintiff sending out a crew to service the sign a week after the defendants requested servicing of it does not constitute a breach sufficient to justify the defendants not performing under the contract. *Id*. at 635-636. For the instant controversy, Defendant gave no time—and voiced no complaints—to Plaintiff to correct the alleged non-payment issue.

For the instant controversy, there is no admissible record evidence that Plaintiff failed to substantially perform any contractual obligation to Defendant to legally justify Defendant's decision to rescind the contract. To reuse the language of *Walker & Co.*, Defendant's last-minute decision to cancel Plaintiff's major annual conference as Plaintiff was setting up for it was "fraught with peril" and exposes Defendant to liability for breach of contract.

Even if Defendant could identify some alleged deficiency through admissible record evidence, Defendant's conduct constitutes waiver as a matter of law. Without ever objecting to the same:

- Defendant accepted Plaintiff's deposit;

16

- Defendant proceeded with scheduling and preparation for Plaintiff's planned event;

- Defendant, for a period of months, coordinated security and logistics for Plaintiff's planned event; and

- Defendant only cancelled the event after Plaintiff and its agents were on-site and were in the process of setting up for the event, and only after third-parties complained about Plaintiff's political views.

(ECF No. 14, PageID. 77, ¶ 13; ECF No. 16-2, PageID. 141-142; ECF No. 16-2, PageID. 143-150; ECF No. 14, PageID. 77, ¶ 15; ECF No. 16-1, PageID. 122, ¶ 14; ECF No. 16-2, PageID. 154; ECF No. 16-2, PageID. 163-164; ECF No. 16-2, PageID. 223- pp. 223-233; ECF No. 16-1, PageID. 123, ¶ 17; ECF No. 16-1, PageID. 124, ¶ 19; ECF No. 14, PageID. 79, ¶ 21; ECF No. 16-1, PageID. 124, ¶ 20).  Such conduct is inconsistent with any claim that Plaintiff was substantially in material breach and thus constitutes waiver of any alleged deficiency under Michigan law.

Further, the admissible record evidence critically demonstrates that Defendant's cancellation was not based on any substantial contractual deficiency on the part of Plaintiff, but rather, on external pressure from third-party interlopers who were opposed to Plaintiff's right-of-center political views.  (ECF No. 14, PageID. 78, ¶ 18; ECF No. 16-2, PageID. 178-181, 188-189).  In other words, Defendant did not terminate the contract because of any alleged substantial breach on the part of

17

Plaintiff—it terminated the contract because of who Plaintiff was and the political viewpoints it expressed.  That is not a legally cognizable justification for repudiation, especially insofar as Defendant had actual knowledge at the time the agreement was entered into by the Parties that Plaintiff's annual conference would be politically right-of-center, controversial, and necessitated security.  (ECF No. 14, PageID. 76, ¶ 12; ECF No. 16-1, PageID. 121, ¶ 8; ECF No. 14, PageID. 77, ¶ 15; ECF No. 16-1, PageID. 122, ¶ 14; ECF No. 16-2, PageID. 154; ECF No. 16-2, PageID. 163-164; ECF No. 16-2, PageID. 223- pp. 223-233).

Additionally, Defendant never provided notice of any alleged payment deficiency or an opportunity to cure prior to terminating the agreement.  Having elected to proceed with the contract without objection, Defendant cannot retroactively invoke an alleged non-substantial breach as a basis for termination. Such conduct further confirms waiver and defeats Defendant's prior substantial breach defense.  Defendant's complete failure to raise any payment-related concern prior to termination—despite months of performance on the part of Plaintiff and Plaintiff incurring hundreds of thousands of dollars in expenses associated with the event—confirms that the alleged payment issue was not only waived, but was never treated by Defendant as a basis for rescission in the first place.  Defendant cannot illegitimately manufacture a post hoc contractual justification for a decision that was,

18

according to the record evidence, driven by external political pressure rather than any alleged substantial failure of performance on the part of Plaintiff.

It should be noted that in Show Ready Technologies, Inc.'s Kory Miller's text message correspondence with Defendant's Karen Addison on May 29, 2024, Mr. Mille asked if the set up for the event could begin on June 12 instead of June 13, and Defendant's Karen Addison responded with "No problem[.]"  (ECF No. 16-2, PageID. 206-207).  On June 13, 2024, Mr. Miller texted Ms. Addison, "Also if you can provide us with the final invoice total we owe you.  Thank you!" (ECF No. 16-2, PageID. 190).  Defendant, by and through Ms. Miller, in fact authorized Plaintiff to setup the conference a day early and without first making the final payment—which Plaintiff was willing, able, and eager to pay, as evidenced by Mr. Miller proactively reaching out to Ms. Miller about the same—, and this constitutes waiver on Defendant's part regarding the deadline by which the balance of the money owed to Defendant would be due.  It should be noted that Ms. Addison even responded to Mr. Miller's request for the final invoice with a thumbs-up emoji, which signifies her approval.  (ECF No. 16-2, PageID. 190).

Defendant, by and through Ms. Addison, in fact authorized Plaintiff to set up the event a day early and before the final payment was made, Defendant, by and through Ms. Addison, sent an approving "thumbs-up" emoji to Kory Miller when he requested that a final invoice be provided after he was authorized to set up early for

19

the event, and now Defendant is claiming that the rental was legitimately cancelled by Defendant in part due to Plaintiff not paying money when it was due.  Defendant's arguments do not comport with the record evidence, which shows that Plaintiff was in fact given the green light—in the form of a "thumbs up" emoji—to set up for the event before the final payment was made.

Where the record reflects ongoing performance by Plaintiff and no admissible evidence of a material breach, summary judgment in favor of Defendant is improper. See *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Defendant's reliance on case law addressing material breach is misplaced. The cases cited by Defendant are readily distinguishable because they involve clear, undisputed failures to perform central contractual obligations or express repudiation prior to termination—circumstances that are entirely absent from the record in this case.  Here, by contrast, the undisputed record reflects ongoing performance by Plaintiff and continued acceptance of that performance by Defendant.

Defendant has not identified any analogous authority where a party was permitted to terminate a contract under these circumstances—i.e., after accepting performance, coordinating execution of the agreement, and then cancelling for reasons completely unrelated to contractual performance.

Accordingly, the undisputed record establishes that Plaintiff did not materially breach the contract, that Defendant's termination was legally unjustified, and that

20

Defendant's affirmative defense fails as a matter of law. Defendant is therefore not entitled to summary judgment.  To the contrary, because no reasonable jury could conclude that Plaintiff materially breached the agreement, Plaintiff is entitled to judgment as a matter of law on Defendant's prior substantial breach defense.

### 3.  A BINDING CONTRACT WAS FORMED AS A MATTER OF LAW THROUGH THE PARTIES' CONDUCT

Defendant's argument implicitly assumes that no binding contract existed between the Parties.  That assumption is incorrect as a matter of Michigan law and undisputed record evidence.

Under Michigan law, a contract may be formed through the parties' words, conduct, and course of dealing, even in the absence of a signed written agreement. *Featherston v. Steinhoff*, 226 Mich. App. 584, 589, 575 N.W.2d 6 (1997) (citing *Temborious v. Slatkin*, 157 Mich. App. 587, 596, 403 N.W.2d 821 (1986) ("Where the parties do not explicitly manifest their intent to contract by words, their intent may be gathered by implication from their conduct, language, and other circumstances attending the transaction.")  Where the parties agree on essential terms and proceed with performance, a binding contract exists. *Erickson v. Goodell Oil Co.*, 384 Mich. 207, 211-212, 180 N.W.2d 798 (1970).

Here, the essential terms of the agreement are undisputed based upon the conduct, language, and circumstances attending the transaction:

21

- The subject matter:  rental of approximately 40,000 square feet of the Russell Industrial Center;

- The dates and times:  June 15–16, 2024;

- The purpose: a speaking engagement requiring security; and

- The price:  $14,396.00, with a $7,198.00 deposit paid upfront.

(ECF No. 14, PageID. 77, ¶ 13; ECF No. 16-2, PageID. 143–150).

The Parties did not merely discuss these terms—they performed them. Plaintiff, through its agent, paid the initial deposit.  Defendant accepted that payment, scheduled the reservation, coordinated logistics for months, and engaged in detailed planning for the event.

Under these circumstances, mutual assent is established as a matter of law. Defendant cannot accept the financial benefits of the agreement, act in reliance on that agreement, and then later deny its existence.

Moreover, Michigan's statute of frauds does not apply due to the nature of the agreement.  See MCL 566.106.  As such, the agreement need not be memorialized in a formal signed writing; the conduct of the parties shows that there was an enforceable agreement.

Accordingly, there is no genuine dispute that a binding contract existed between the parties.  To the extent Defendant suggests otherwise, that argument fails as a matter of law based upon the uncontroverted material facts.

22

## V.  PRAYER FOR RELIEF

For the reasons set forth herein, Plaintiff prays that the Court will deny Defendant's Motion for Summary Judgment (ECF No. 18, PageID. 240-296) and grant Plaintiff's Motion for Summary Judgment (ECF No. 16, PageID. 92-237). There is no material dispute of fact and the applicable law is clear:  Plaintiff rented Defendant's Russell Industrial Center by and through Show Ready Technologies, Inc., as Plaintiff's agent, Defendant knew at all relevant times that Plaintiff planned a controversial right-of-center political event because Plaintiff's representatives personally informed Defendant's representatives of the same prior to the contract being created, Defendant breached that rental agreement by cancelling it last-minute, and Plaintiff suffered financial injury as a direct and proximate result of Defendant's breach of the agreement.

Respectfully submitted,

**BRISTOW LAW, PLLC**


/s/ Kyle J. Bristow
Kyle J. Bristow (P77200)
P.O. Box 453
St. Clair, MI 48079
(T):  (248) 838-9934
(F):  (586) 408-6384
(E):  bristowlaw@gmail.com
*Attorney for America First Foundation*

Dated:  April 14, 2026

23

# **CERTIFICATE OF SERVICE**

I, Kyle J. Bristow, affirm that I am an attorney of record for a party to the above-captioned civil action, and on April 14, 2026, I submitted this document to the Court's Electronic Filing System, which should provide notice of said filing to all attorneys of record for parties to the instant civil action who have registered to receive such service.

/s/ Kyle J. Bristow
Kyle J. Bristow (P77200)
P.O. Box 453
St. Clair, MI 48079
(T):  (248) 838-9934
(F):  (586) 408-6384
(E):  bristowlaw@gmail.com
*Attorney for America First Foundation*

Dated:  April 14, 2026