UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMERICA FIRST FOUNDATION,

PLAINTIFF,                    Case No. 24-cv-12684

-vs-                                          Hon. DENISE PAGE HOOD

CLAY STREET ENTERTAINMENT,
LLC,

DEFENDANT,
_____/

## **DEFENDANT'S REPLY TO AMERICA FIRST'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant, Clay Street, filed a motion to dismiss America First's breach of contract claim alleging that: (1) there was no privity of contract; and (2) they were never paid the remainder of the outstanding balance prior to the load in as required by the contract. America First filed a response.

A. AMERICA FIRST WAS NOT A PARTY TO THE CONTRACT TO RENT THE VENUE

Clay Street alleges that any valid contract for the rental of the Russell Event Center was with Show Ready, not America First. America First counters that Show Ready was their agent. America First cites numerous cases in which a principal attempts to escape liability on a contract entered into by their agent. In those cases, the correct question is whether that agent had apparent authority to bind the principal.

1

This case is different. The question at issue here is not the scope of Show Ready's authority, but whether or not Show Ready was an agent of America First. America First attempts to use agency offensively to allow themselves to step into the shoes of Show Ready to enforce a contract. They should only be allowed to do so if Show Ready was in fact their agent.

America First criticizes Clay Street's reliance on the right to control test for agency in *Little v Howard Johnson Co.,* 183 Mich.App. 675, 455 N.W. 2d 390 (1990). According to America First, the correct test to determine if an agency exists is one of actual or apparent authority. America First relies on *Meretta v. Peach,* 195 Mich. App. 695, 491 N.W.2d 278 (1992).  America First's reliance is misplaced. It failed to carefully read *Meretta*. While it is true that actual or apparent authority is the test used to determine whether an agent may bind a principal, the first necessary step is to determine whether there is in fact an agency relationship between the two entities. *Meretta* specifically cites the right to control test found in *Little* as the test to be used to determine if an agency relationship exists. *Meretta*, 455 N.W.2d at 280. *Meretta* reaffirms that "[t]he test of whether an agency has been created is whether the principal has a right to control the actions of the agent." *Id.* If no agency relationship was created, there is no need to examine whether a non-agent had apparent authority to bind another entity.

America First argues that Clay Street ratified its agreement with America First

by its actions. However, as discussed in detail below, Clay Street's actions are consistent with its belief that it had entered into a contract with Show Ready—not with America First.

Even relying on the apparent authority test advanced by America First, Clay Street prevails. At the time the contract was entered into, all parties acted as if the contract was between Clay Street and Show Ready, not America First. America First can only point to the ambiguous language that Show Ready stated that it was acting as the "agency/production company" for "our client" [ECF 16-2, PageId. 137]. America First ignores that fact that its written contract with Show Ready does not proport to create an agency relationship and explicitly state that no other relationship will be created between the parties absent an additional written agreement [ECF 18-2]. It ignores the fact that the contract between Show Ready and Clay Street does not reference America First and is explicitly a contract between Show Ready and Clay Street—a contract in which Show Ready accepts liability for the use of the premises [ECF 18-3]. The insurance required under the contract for the use of the venue was provided to Clay Street in Show Ready's name, not America First, and America First is not even named as an additional insured [id.]. When the event was cancelled, Clay Street sought a release from Show Ready, not from America First [ECF 16-2, PageID. 140]. These communications and documents make it clear that Show Ready and Clay Street understood that they were the parties to the rental contract.

3

At or near the time of the event, America First understood that it was not a party to the contract between Show Ready and Clay Street. On October 10, 2024, America First filed a verified complaint against Clay Street. In that complaint, Nick Fuentes, President of America First Foundation, does not claim that America First rented the venue through an agent. Rather, he claims that the contract was between Clay Street and Show Ready, and that America First was a third-party beneficiary of the contract [ECF 1, paragraphs 13, 15 and 16]. America First amended its complaint 14 months later, presumably when it discovered Michigan's third-part beneficiary law was not favorable to them [ECF 14]. While it may amend its legal theory, it may not amend the factual allegations in its verified complaint. *Turner v. Tacket*, No. CV 16-7, 2017 WL 1047372 at *3 (W.D. MI. Feb. 27, 2017); *see also McIntosh v. Thompson*, No. CV 15-56-HRW, 2016 WL 6871241 at *3 (E.D. Ky. Nov. 21, 2016) ("a party cannot create a genuine issue of material fact to avoid summary judgment merely by making new allegations that are inexplicably omitted from, materially inconsistent with, or contradict allegations previously set forth in a verified complaint or deposition testimony").

Despite America First's claim, in both its motion for summary judgment and its opposition to Clay Street's motion for summary judgment, that it was obvious to Clay Street in April of 2024 that Show Ready was merely an agent of America First, America First apparently did not realize this fact until December 2025. It did not

realize this fact until it needed Show Ready to be its agent to establish privity of contract to advance its claim against Clay Street.

Had anyone involved in the event believed that Show Ready was merely the agent for America First, they would have acted differently. Show Ready would have acted as a fiduciary and not hidden the true cost of the venue rental from America First. They would have procured insurance naming America First as either the insured party or additional insured party. America First would have demanded to see a copy of the contract with Clay Street that its alleged agent, Show Ready, entered into on its behalf. Clay Street would have required America First be named in the supplemental insurance policy and would have demanded a release from America First, not Show Ready, when the event was cancelled.

B. THE TIMELY PAYMENT OF THE BALANCE OF THE FEE WAS A MATERIAL TERM OF THE CONTRACT

America First claims that it was substantially performing under the contract because it had invested substantial time and money into preparing for the event. This is of no moment. The performance at issue in examining whether a party is breached performance owed to the other party. In this case the payment of the remainder of the fee to Clay Street prior to the deadline. This was something neither America First nor Show Ready made an effort to accomplish. On June 10, 2024, Show Ready asked for a final invoice. It was provided on June 12, 2024 [Ex A, documents received from Show Ready Technologies, p. 11 of 11 (date notation made by Show Ready)]. As

5

indicated in the affidavit of Niko Matsamakis, Show Ready made no attempt to pay the balance of the invoice [R. 18-2].

America First failed to pay its balance in a timely manner as required by the Schedule A to the contract [Ex A]. Any claim America First has is against Show Ready, not against Clay Street.

### C. ANY CONTRACT WAS BETWEEN SHOW READY AND CLAY STREET.

Again and again, America First attempts to place itself in the shoes of Show Ready and attempts enforce a contract that it was not a party to. As explained repeatedly in the multiple briefs filed by Clay Street, any contract it entered into was with Show Ready, not America First. Any contract that was ratified through the actions of Clay Street was the contract with Show Ready, not America First.

### D. CONCLUSION

For the reasons stated in this brief and Clay Street's motion for summary judgment, as well as in its response to America First's motion for summary judgment, this Court should enter judgment in favor of Defendant Clay Street.

Respectfully Submitted,


*/s/ Ben M. Gonek*
BEN M. GONEK (P43716)
Law Office of Ben Gonek, PLLC
14290 Northline Rd.
Southgate, MI 48195
(313) 963-3377
ben@goneklaw.com

*/s/ James R. Gerometta*
JAMES R. GEROMETTA (P60260)
Mogill, Lemanski & Gerometta, PLLC
27 E. Flint St.
Suite 2
Lake Orion, MI 48362
(313) 530-9505
james@geromettalaw.com

Dated:  April 21, 2026

## **CERTIFICATE OF SERVICE**

James Gerometta hereby states that on the 21st day of April 2026, he caused the foregoing *Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment* to be filed with the Court and that copies of same were forwarded to all counsel of record via the CM/ECF system.

*/s/ James R. Gerometta*
JAMES R GEROMETTA